an appellate court, and in a close case the discretion of the trial judge
should not be lightly disregarded. I think the judgment should be
affirmed, with costs.

McLENNAN, J., concurs.

(39 App. Div. 459.)

## LYMAN v. FIDELITY & DEPOSIT CO. OF MARYLAND et al.

(Supreme Court, Appellate Division, First Department. April 7, 1899.)

EXCISE BOND—PENALTY—DAMAGES—MEASURE OF RECOVERY.

An excise bond given under Laws 1896, c. 112, § 18, as amended by
Laws 1897, c. 312, providing for the observance of the special mandates
of the liquor tax law, and also for good behavior in particulars essential
to the orderly conduct of the liquor business, is a contract to pay a
definite sum for the breach of any one condition defined therein. And
under Laws 1896, c. 112, § 34, and Laws 1897, c. 312, § 29, providing for
the separate and independent recovery of civil penalties as well as crim-
inal fines, the liability of a surety for the breach of such bond, conditioned
also to pay all fines and penalties accruing during the life thereof, is not
limited to the amount of one or more of such penalties or fines, as liqui-
dated damages, but the full penal sum named in such bond is the measure
of the liability for the breach of any one condition thereof.

Appeal from trial term, New York county.

Action by Henry H. Lyman, as commissioner, etc., against the
Fidelity & Deposit Company of Maryland, impleaded with another.
From a judgment for plaintiff, the company appeals. Affirmed.

The action is upon an excise bond given by a corporation known as the "Shen-
andoah Social Club" as principal, and this appellant as surety, to the people of
the state of New York. The bond is in the penal sum of $1,600, conditioned as
follows: "Whereas, the above-bounden principal is about to apply for a liquor
tax certificate in the sum of eight hundred dollars, for excise tax on the business
of trafficking in liquors at 502 and 504 Sixth avenue, in the city of New York,
county of New York, state of New York, under subdivision 1 of section 11 of the
liquor tax law of the state of New York: Now, the condition of the obligation
is such that if the said tax certificate applied for, as aforesaid, is given unto
the said principal, and the said principal will not, while the business for
which such tax certificate is given shall be carried on, suffer or permit any
gambling to be done in the place designated by the tax certificate in which the
traffic in liquors is to be carried on, or in any yard, booth, or garden appertain-
ing thereto or connected therewith, or suffer or permit said premises to be-
come disorderly, and will not violate any of the provisions of the liquor tax
law, or any act amendatory thereof or supplementary thereto, then this obli-
gation shall be void; otherwise it is to be and remain in full force and effect,
to cover every violation of the liquor tax law, and all fines and penalties in-
curred or imposed thereunder. An action for the breach of any condition
of this bond may be maintained without previous conviction or prosecution
for violation of any provision of said liquor tax law." This bond was given
after the amendments to the liquor tax law enacted in 1897 had gone into
effect. It is consequently governed by the liquor tax law of 1896 as thus
amended. Upon the trial, the plaintiff proved, by undisputed and unimpeached
testimony, that the principal in the bond permitted the premises therein speci-
fied to become disorderly. He also proved, by equally undisputed and unim-
peached testimony, violations of the liquor tax law, in that such principal sold,
or allowed liquors to be sold, in said premises, on Sunday and between the
hours of 1 and 5 a. m. on other days. The defendant surety offered no testi-
mony, but contented itself with a motion to dismiss the complaint upon the
ground (we quote from the record) "that it is in form an action on a contract,

and not an action for statutory penalties, and that no judgment can be rendered against the defendant the Fidelity Surety Company, as the amount of the statutory penalties cannot be fixed· in this action." This motion was denied, and the defendant excepted. The defendant surety company then asked to go to the jury upon the following questions: First. Upon the question whether, on the evidence in this case, there was any breach of the condition of the bond by the Shenandoah Social Club. Second. What breaches, if any, of the conditions of the bond, by the Shenandoah Social Club, the evidence proves to have been committed; that the jury may determine the question of fact with respect to such breaches, if any. Third. As to the amount of the penalties, if any, which should be imposed upon the Shenandoah Social Club, in consequence of the alleged violations of the liquor tax law, which the plaintiff claims to have proved in this action. Fourth. To determine what amount the plaintiff should recover against the defendant the surety company in this action, and that such amount, within the limit of the penalty of the bond, should be such a sum as, in the opinion of the jury, would fairly represent the proper penalty so found to be imposed upon the Shenandoah Social Club for the violation of the liquor tax law claimed by the plaintiff to have been proved in this case, provided the jury find that such violation took place. The court declined to submit all or any of these questions to the jury, to which declination the defendant excepted. The court thereupon directed a verdict for the plaintiff for the full amount of the penalty of the bond ($1,600), to which direction the defendant excepted.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and PATTERSON, JJ.

James R. Soley, for appellant.

Royal R. Scott, for respondent.

BARRETT, J. The main question presented by this appeal is whether the appellant's liability upon the bond is in the nature of a penalty or of liquidated damages. The bond was given in accordance with the provisions of section 18 of the liquor tax law. Its purpose was to secure on the part of the principal, not only observance of the liquor tax law and its special mandates, but also good behavior in other particulars essential to the orderly and proper conduct of the business. Thus, we find, as one·of the conditions of the bond, that the principal will not suffer or permit any gambling to be done in the place where liquor is to be sold, or suffer or permit the premises to become disorderly. These conditions precede and are additional to the general condition that the principal will not violate any of the provisions of the law itself. Gambling in the premises is not, of itself, a violation of the liquor tax law. Nor is every form of gambling necessarily a violation even of the Penal Code upon the subject of "Gambling." Section 343 of that Code is aimed at the keeping of a room, etc., to be used for gambling; also at the letting of a room for such use by the owner or his agent, or the permitting therein by either of such use. Section 344 defines a "common gambler" as a person who owns a place for gambling, or who hires or allows a room to be used for such purpose, or who engages as dealer, gamekeeper, or player in any gambling or banking game. Violations of this section are made a felony. The condition of the bond has no special reference to either of these sections. What is required of the principal is, not that he will respect the Penal Code alone, but that he will not suffer "any gambling" in the premises. The place where liquor is sold was not deemed by the legislature a suitable locality for gambling in

any form; and yet the liquor tax law prescribes no penalty, civil or criminal, for suffering or permitting it in the licensed premises. It seems quite clear, therefore, that the intention was not to limit a recovery upon the bond to the civil or criminal penalties prescribed in the act for violation of its provisions. The alternative, therefore, in the illustrative example referred to, is either a recovery of the full penal sum specified in the bond, or practically nothing, The legislature surely meant to enforce its policy in an effective manner. Its policy and will were that there should be no gambling of any kind in premises licensed to sell liquor. How could this be enforced if proof were required of the actual pecuniary loss to the people resulting from the commission of each act of violation or noncompliance? A construction requiring this would simply nullify the law. The people sustain no direct pecuniary injury from a game of cards for money between private individuals in a liquor saloon, and yet just such an act was one of those which the bond was designed to prohibit.

We may, however, go further, and say that all the conditions of the bond denote a similar purpose. It is practically a bond for the principal's good behavior, as defined in the conditions. Nothing would be gained here by an analysis of the principles upon which liquidated damages and penalties rest. It is sufficient to say that the intention of the legislature was plainly to enforce its will, and compel submission to its policy, by requiring from principal and surety a distinct contract to pay a definite sum of money upon the breach of any one of the defined conditions of the instrument.

It is also contended that, even if the penal sum be treated as liquidated damages, such damages are satisfied by the payment of the civil or criminal fines prescribed in the act. What we have already pointed out is also an answer to this contention. There is, however, another answer. As the law read prior to the amendment of 1897, there were no civil penalties. Laws 1896, c. 112, § 34. There were provisions only for criminal fines and for the recovery thereof upon the bond. It is evident that, under this original act of 1896, it was not intended to limit the surety's liability to these fines, even treating them as liquidated damages. If that had been the intention, liability would have been dependent—First, upon proof of the principal's guilt, not by a preponderance of evidence, but beyond a reasonable doubt; and, second, upon the discretion of the trial court in awarding punishment. If imprisonment without fine were awarded, there would be no liability at all. The principal would first have to be found guilty beyond a reasonable doubt, and then fined. The bond, on this construction, would have been a sham and a farce. If, however, the main penal sum were treated as liquidated damages, the act was harmonious, and the bond efficacious. If the official entitled to bring an action upon the bond chose to sue for the criminal fine, and for that alone, he could do so, and in that case he might rest upon the conviction and sentence. Upon the docketing of the judgment for the fine, as provided in section 36, the official was authorized, by the last paragraph of that section, to proceed to collect the amount of such judgment, together with the costs of collection, from the sureties on the bond. The sureties having, in effect, contracted to pay any such judg-

ment, the official, in the action against them, was not bound to go behind it, and prove the offense which resulted in the judgment. Upon the other hand, if the official sued for the full penal sum specified in the bond, as for a breach of one or more of the prescribed conditions, he had to prove the breach by independent evidence. The bond was clearly intended to cover the two contingencies and the two remedies. Civil penalties are now prescribed. Laws 1897, c. 312, § 29, amending Laws 1896, c. 112, § 42. The act of 1896 was thereby amended to harmonize with this additional feature. To the original conditions of the bond, as prescribed in section 18, was added the further condition "that all fines and penalties which shall accrue during the time the certificate applied for is held, and any judgment or judgments recovered therefor, will be paid together with all costs taxed or allowed,"—thus plainly covering these new civil penalties. This is emphasized by the amendment embraced in the last paragraph of the section. That paragraph authorizes the state commissioner of excise, "without previous prosecution or conviction for violation of any provision of the liquor tax law or for the breach of any condition of the said bond, to commence and maintain an action in his name as such commissioner ＊ ＊ ＊ for the recovery of the penalty or penalties incurred or imposed for a violation of the liquor tax law." Coupling this with section 42, supra, the scheme of the act, as amended, becomes entirely clear. All questions as to the proper plaintiff in actions upon bonds given under the act, or in actions for penalties incurred, are set at rest. The state commissioner of excise is authorized to sue the principal for the civil penalties. He is also authorized to sue both principal and surety for the breach of any condition of the bond. These suits are independent. In the action for the civil penalties, he may recover from the principal more or less than the penal sum specified in the bond, dependent upon the number of violations proved. Having thus secured his judgment against the principal, he may recover the amount thereof (to the extent of $1,600) from the surety in an action upon the bond. In such an action against the surety, he need only prove the judgment against the principal. He may, however, recover upon the bond, independently, the full penal sum, upon proof of the breach of any one of its conditions. The prescribed bond, plus the prescribed civil and criminal penalties, constitutes the totality of legislative precaution. From the moment the tax is paid, there is no trace anywhere of pecuniary interest in the people. Bond and penalties alike are then aimed at one definite end,—obedience to the law and decent and orderly conduct of the business authorized by it. We think it clear that the plaintiff was therefore entitled to recover the penal sum of $1,600, according to the true intent and meaning of the contract.

The conclusion at which we have arrived is in entire accord with the views of the appellate division in the Fourth department, as expressed in Mr. Justice McLennan's careful opinion in Lyman v. Insurance Co, (handed down in January, 1899) 37 App. Div. 236, 55 N. Y. Supp. 770. It is also supported by the reasoning in People v. Eckman, 63 Hun, 209, 18 N. Y. Supp. 654, a somewhat analogous case under the former excise act; and also by Mr. Justice Davy's opinion at special

term in the late case of Lyman v. Brucker (Sup.; Feb., 1899) 56 N. Y. Supp. 767.

There was no disputed question of fact to go to the jury. The evidence was uncontradicted and unimpeached. This was not a criminal action, either in form or substance. It was simply a civil action upon a contract, and was so properly treated.. The propriety of directing a verdict upon undisputed facts in such an action cannot be questioned.

It follows that the judgment appealed from is right, and should be affirmed, with costs. All concur.