(100 App. Div. 148)

### CULLINAN, State Excise Com'r, v. HOSMER et al.

(Supreme Court, Appellate Division, Fourth Department. January 4, 1905.)

1. INTOXICATING LIQUORS—PHARMACISTS—SALES—GAMBLING—SLOT MACHINES.

The maintenance of a slot machine in a drug store, by the operation of which a person who dropped five cents into the machine became entitled to at least one cigar, and possibly to three, the cigars delivered being the same as those retailed for five cents each, did not constitute gambling, within the liquor tax law, prohibiting gambling on the premises occupied by a pharmacist authorized to sell liquor.

2. SAME—PRESCRIPTIONS—QUESTION FOR JURY.

Where, in a proceeding against a pharmacist for selling liquor without a prescription, defendant contradicted the testimony of the excise agent that no prescription was produced at the time of the sale, and attempted to establish the delivery of a prescription authorizing the sale, whether the sale was on a prescription was for the jury.

3. SAME—SECONDARY EVIDENCE—PRELIMINARY PROOF.

Under the liquor tax law, authorizing pharmacists to sell liquor on prescriptions, and requiring such prescriptions to be preserved in a book kept for that purpose, evidence of a pharmacist that prescriptions authorizing certain sales in question were delivered to him and kept on a spindle, and that he did not know what had become of them; that he had looked for them, but could not find them, without disclosing the extent of his search, etc., was insufficient to justify secondary evidence thereof.

4. SAME—EVIDENCE.

In an action on a pharmacist's liquor tax bond for the alleged illegal sale of liquor without a prescription, evidence *held* insufficient to sustain a verdict for defendants.

Williams, J., dissenting.

Appeal from Special Term, Erie County.

Action by Patrick W. Cullinan, as State Commissioner of Excise, against Eli T. Hosmer and another. From a judgment in favor of

defendants, and from an order denying plaintiff's motion for a new trial on the minutes, he appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Royal R. Scott, for appellant.
Maurice C. Spratt, for respondent Hosmer.
Robert F. Schelling, for respondent Guarantee Co.

HISCOCK, J. This action was brought to recover the penalty of an undertaking executed by the individual defendant as principal and by the guarantee company as surety upon the issue of a liquor tax certificate to the former as a duly licensed pharmacist. It was and is claimed that the conditions of this undertaking were violated, first, by the permitting of gambling upon the premises occupied by the pharmacist, and, secondly, by the sale of liquor without the requisite prescription. The learned trial justice ruled as a matter of law against plaintiff's contention upon the first proposition, and the jury found against him upon the second one. · We think that the trial justice ruled correctly, but that the verdict of the jury was so erroneous that the judgment should be reversed, and a new trial granted. The certificate issued was "upon ·the business of trafficking in liquors by a duly licensed pharmacist, which liquors can only be sold upon the written prescription of a regularly licensed physician, signed by such physician, which prescription shall state the date of the prescription, the name of the person for whom prescribed, and shall be preserved by the vendor, pasted in a book kept for that purpose." The undertaking executed was conditioned that the principal would not "suffer or permit any gambling to be done in the place designated," etc., and, generally, that he would "not violate any of the provisions of the liquor tax law." The alleged gambling violative of this condition consisted in the operation of a slot machine in the drug store. A person who dropped five cents into this machine became entitled by its operations to at least one cigar, and possibly to three. These cigars were the same as those retailed at the counter for five cents apiece. Therefore the operator of the machine could not lose anything, and might possibly make or gain two cigars. There was absent any element of chance and resulting loss, so far as he was concerned, and we think there was thus lacking an essential element to constitute "gambling" within the provisions of the undertaking. The latter was given for the purpose of securing a general observation of the provisions of the liquor tax law, and for the purpose of securing, in addition, especial protection against disorderly premises and gambling. There is no provision in the liquor tax law itself which was violated by the operation of this machine, and we think that it would be a narrow and harsh construction to hold that ·the clause against gambling was violated by the acts· shown here.

An agent of the excise department testified that upon two occasions while the undertaking was in force he procured a bottle of brandy of the individual defendant without the production of any prescription whatever. He was corroborated as to the .delivery of the liquor by ·other agents. The defendant did not dispute.the sale of the liquor,

but contradicted the testimony of the agent that nothing in the form of a prescription was produced, and did attempt to establish by his evidence that the requisite prescription was produced upon each occasion upon the sale of the liquor. Counsel for the plaintiff urged upon the trial, as he does upon this appeal, that no issue of fact was raised upon all of this evidence which could be submitted to the jury, but that a verdict should have been directed for the plaintiff. We think, however, that he was and is wrong in this contention. We shall assume for the purposes of this appeal that the burden rested upon plaintiff of establishing that the liquor had been sold without any proper prescription. Upon plaintiff's testimony this burden was sustained, but when the defendant contradicted the testimony of the agent that no paper or prescription was delivered it became a question of fact for the jury to determine whether the agent's testimony was true. When we pass by this question of law, however, we think that the verdict of the jury in defendant's favor upon this point was against the weight of evidence. The evidence of the agent was clear and decisive that no prescription, and that nothing which purported to be a prescription, was delivered upon the purchase of the brandy. His testimony in regard to the purchases is corroborated at various points by the evidence of other agents and by the concession of the defendant that the liquor was sold. When the defendant seeks to dispute the plaintiff's case upon the point of a prescription, and show that one was delivered to him upon each day, his testimony is indefinite, uncertain, and in every way unsatisfactory. He had failed to comply with the express requirements of the statutes that these prescriptions, if given, should be preserved in a book, and therefore, upon the excuse that they had been lost, gave secondary evidence of their purported contents. We quote some of the evidence:

"Q. What was this prescription [referring to the first one]? A. It called for half a pint of brandy. Q. And who was it purported to be signed by? A. That I don't remember. Q. I ask you if that prescription was signed by a physician? A. It was. Q. Do you remember who the physician was? A. No, I do not. Q. What kind of a prescription was it? Tell us the contents of the prescription [referring to the second one]. A. The prescription called for a half pint of brandy. Q. And by whom was it signed? A. By a physician, I suppose, that wrote the prescription. Q. Do you remember the name of the physician? A. No, I do not."

And upon cross-examination he testified:

"I do not now remember whose name appeared upon these prescriptions. I can't tell who it was, nor where he lived. I can't remember whether it was some one that I knew personally. * * * I believed him to be [a physician]. That is the best I can say. I could not swear that he was a physician, and I do not want to swear that it was a man that I knew at all. I cannot now swear whether or not the same name appeared upon both prescriptions. I cannot now swear that the party whose name was upon those so-called prescriptions didn't live in New York City."

Subsequently, for the purpose of strengthening his defense, the defendant was recalled, and after some effort testified, in substance, that he thought there was filled in in the alleged prescription the name of the person for whom it was, but he did not remember what the name was; he did "not remember definitely whether it was a Buffalo phy-

sician," but it was his "impression of it that a Buffalo physician," but he could not recall the name. This evidence is altogether too indefinite and unreliable to be a proper basis for a verdict of the jury condemning the truthfulness of plaintiff's evidence and holding that no violation of the liquor tax law had been proved. The provision of the statute is clear and exacting in its requirement of a certain prescription as authority for the sale of liquor by a pharmacist. It is not within the contemplation of our excise laws that a druggist shall engage in a general traffic in liquors. The tax required of him is inconsequential in amount, and as a matter of fairness, if nothing else, he should not be allowed upon its payment to engage in a general and indiscriminate traffic against those who have paid a much higher license fee for the purpose of enjoying such privilege. In this case there does not appear to have been any emergency which might excuse, even if it did not fully justify, the licensee in hurried or careless action. There does not seem to be the slightest reason why he should not have required and been certain of a full and faithful observance of the statute before selling the liquor, and the evidence given by him does not lead us to the conclusion that the jury were warranted in finding any such care upon his part. If evidence plainly and absolutely indicating a violation of these provisions of the statute may be met and overcome by such testimony as was given in behalf of defendants upon this trial, then it seems to us the statute requiring the prescription in question might as well be repealed. If defendants' evidence here presented is sufficient to show compliance with the statute, then we can hardly conceive of any spurious paper manufactured by anybody which would not be a sufficient authority for the sale of liquor by a pharmacist.

The learned counsel for the respondents urges upon us that hardship might follow if a pharmacist were required at his peril to know that the purported signature upon the prescription was in fact the genuine signature of a duly licensed physician; that the signature might turn out to be a clever forgery, or that the physician, once regular and duly licensed, might have been in some manner disqualified and disbarred. We agree that the statute ought to be interpreted in a reasonable way, and it is not necessary for us now to decide that a pharmacist selling liquor in good faith upon an apparently genuine signature of a person known or generally reputed to have been duly licensed would be liable for an honest and excusable error. Possibly the absolute terms of the statute might be subject to a legal construction which would make some allowance for such an honest mistake. But in this case the evidence of the defendant himself does not indicate that there was anything whatever about the alleged prescription which he swears to that indicated, or fairly allowed him to rely upon it as, a compliance with the statute. We think that we should err in the direction of nullifying a statutory enactment if we sustained the verdict which has been rendered upon this evidence.

We are not convinced that the views expressed are erroneous simply because the defendant pharmacist placed upon the bottles of liquor his label. This imposed no particular additional risk upon him, for

the evidence was overwhelming and undisputed that the liquor came from his store.

We further think that no sufficient basis was established for allowing the defendant to give secondary evidence of these alleged prescriptions, and that the learned trial justice erred in overruling plaintiff's objection thereto. The statute explicitly told the defendant pharmacist what to do with these prescriptions if they were produced, as claimed by him. If he had complied with this statute, and they were genuine and sufficient, they would have been an absolute and complete answer to this action, and would have relieved him from all possible trouble. He deliberately failed to comply with the statute, and then sought to escape trouble by giving parol testimony of the contents of the papers. As a basis for this he swore: "I have not got that prescription [referring to the first one]. I don't know where it is. I have looked for it, but I couldn't find it. I put it on file with other prescriptions of that character, * * * a spindle. * * * I don't know what became of the prescription. Probably been destroyed." And in regard to the second he testifies that it "was put on the spindle same as other prescriptions of that kind. Remained there for a time, and finally taken off. I do not know what became of it. I have searched for it since, but I was not able to find it." This testimony does not indicate to our minds any very extensive search for these prescriptions, or any sufficient explanation of when or by whom they may have been destroyed or thrown away. It does not appear who else in the store might have had access to these papers. There is no word of this line of evidence which might not truthfully have been given if a clerk or other person had intentionally and obediently destroyed or laid aside these papers because of this approaching lawsuit. While it may be that the failure to comply with the statute, and the alleged loss of them, which, if genuine, would have been so helpful to the defendants, have been entirely innocent and without design, still it is not too much to require of defendants to give clear and convincing proof as a basis for evidence of a secondary character. And this was not done. We think that the judgment should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event upon questions of law and fact. All concur, except WILLIAMS, J., who dissents.