In re CULLINAN, State Com'r of Excise.

(Supreme Court, Appellate Division, Fourth Department. July 12, 1906.)

1. GAMING—SLOT MACHINES.
　　The maintenance of a slot machine in a saloon, by the operation of which one who dropped a nickel into the machine became entitled to at least 5 cents in trade, and possibly more, was a violation of Liquor Law. Laws 1896, p. 66, c. 112, § 23, subd. 7, prohibiting gambling in a saloon.
　　[Ed. Note.—For cases in point, see vol. 24, Cent. Dig. Gaming, § 198.]

2. SAME—STATUTES—CONSTITUTIONALITY.
　　The statute prohibiting gambling in a saloon is subsidiary to the Constitution (article 1, § 9), declaring that "no lottery or the sale of lottery tickets, pool-selling," book-making, or any other kind of gambling, shall be authorized or allowed.

Appeal from Special Term, Ontario County.

Petition by Patrick W. Cullinan, as excise commissioner, for the cancellation of a liquor-tax certificate issued to Walter D. Peck and another. From an order denying a cancellation, petitioner appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Samuel H. Salisbury, for appellant.
Thomas Carmody, for respondents.

SPRING, J. Application was made to revoke liquor-tax certificate 21,050, held by the defendants, on the ground that they "suffered and permitted gambling to be done" in their saloon at No. 23 Seneca street, in Geneva, in said county, and which is the place designated in such certificate where they were authorized to traffic in liquors. The proofs were taken before a referee, and submitted to the Special Term, and the material facts are undisputed. The alleged gambling was by means of a patented slot machine, known as the Yale Wonder Clock. This machine was about seven feet in height by three feet across, contained an advertising contrivance, a music box, a clock, and four tubes, in which tickets were placed to be rung up upon putting a nickel in the slot on the side of the machine. The tickets were placed in the tubes by the proprietor, and every time the machine was operated a metal disc or ticket was discharged. On the face of the machine, arranged horizontally, were four glass discs, colored white, blue, green, and red, respectively, and whenever the metal ticket or disc was ejected from the machine one of the glass discs was illuminated. The white entitled the player to 5 cents in trade,

the blue 10 cents, the green 15 cents, and the red 25 cents. The discs were inscribed correspondingly, "Good for 5c in trade," and so on. The proof shows that the proprietor could distribute these metal discs in the tube as he saw fit. At the time the machine was tested by the agents of the petitioner in July, 1905, there had been placed in the tubes, according to the testimony of the defendant Peck, 176 five cent checks, 20 blues, calling for 10 cents, 4 green, each 15 cents, and 2 reds, for 25 cents each. The player, instead of paying cash at the bar for the amount of his purchase, presented his check, and received the same quantity in trade as though he paid the money. There was no rebate or reduction, but obviously the scheme was to entice trade by stimulating the gambling spirit. The player had no knowledge of the arrangement of the metal discs, and played in the hope of securing one or more of those calling for a larger sum, and knew that no loss could accrue to him in any event. The proprietor expected to make up for the few checks in excess of the actual value of the nickel in the increased trade and the consequent profit inuring to him.

The court dismissed the petition, relying on Cullinan v. Hosmer, 100 App. Div. 148, 91 N. Y. Supp. 607, decided by this court, and which held that the operation of a similar slot machine was not gambling. We have decided to disagree with the principle of that case in so far as it holds that the running of the machine is not gambling, within the inhibition of the Liquor Tax Law, Laws 1896, pp. 66, 72, c. 112, § 23, subd. 7; section 31, subd. "e." We are constrained to this conclusion both by reason of more mature consideration of the question, and also because of the decision in People ex rel. Ellison v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601, which had not been reported at the time of the previous decision, or at least had not come to our attention. It is proper to add, however, that the statement in the opinion of the Hosmer Case, that "there is no provision in the liquor tax law itself which was violated by the operation of this machine," may have been founded on the original liquor tax act, which did not specifically prohibit gambling in the place where liquor was sold (chapter 112, pp. 66, 72, Laws 1896, § 23, subd. 8, and section 31, subd. "e"); and also on the statement to that effect in Lyman v. Shenandoah Social Club, 39 App. Div. 459–462, 57 N. Y. Supp. 372, which was correct at that time, but subsequent amendments have added the prohibitory clauses. It is also to be noted that the action in the Hosmer Case was to recover the penalty on the bond, and the chief ground for the new trial was that the verdict was contrary to the evidence.

The chief element of gambling is the chance or uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. In using the present machine we may assume that the player cannot lose. By far the greater majority of the checks called in trade for the precise sum deposited in the slot. If every ticket represented five cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel he ventures, and that is the vice of the scheme. It he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling it is

not important who may be the loser. In the machine involved in Lyman v. Kurtz, 166 N. Y. 274, 59 N. E. 903, when a five-cent piece was dropped in one of the several slots, the color upon the face of the machine denoted whether the player had won or lost, and he might play for 10 cents and up to a dollar. There were several chances, but he was not certain to win at all. The court, in condemning that machine as a gambling device, within the meaning of the liquor tax law say, at page 279 of 166 N. Y., page 905 of 59 N. E.:

"The evidence shows the machine to be a contrivance or apparatus by which it is determined who, as between the player and proprietor, is the winner or loser of the money hazarded. The player stakes or hazards his money on a chance, and that is sufficient to make out the gambling. Within the general understanding, such a machine is a gambling device."

The inventor of the present machine has attempted to obviate the criticism to which other slot machines have been subjected by cunningly returning to the player operating the machine a check or ticket which secures to him in cigars or liquor the amount of his stake. Like most endeavors to adhere to the letter of the law while violating its spirit, he cannot succeed. The present device attractively ministers to the gambling humor the same as other slot machines of substantially similar design. Unless it did this, it would not entice the customer. If in every instance it actually returned five cents in coin to the player, no one would pretend that the device would attract any one. So if on every cast a ticket was run out calling for five cents in trade, no person would take the trouble to drop a nickle in the slot. It is the hazard—the chance of winning more than the sum ventured—which draws people to the machine, and that element was the conspicuous one retained in its mechanism, and it is that which brings it within the condemnation of the statute forbidding gambling in a place where liquor is sold.

In People ex rel. Ellison v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601, the relator, who was the publisher of the United States Tobacco Journal, was arrested charged with advertising a lottery, in violation of section 327 of the Penal Code. The scheme, which was the gravamen of the charge, was to distribute money prizes in large sums to those estimating the closest to the number of cigars on which taxes were collected by the United States government during the month of November, 1903. The privilege was supposedly confined to purchasers of the cigars, for the cigar bands had to be returned with the estimates, and the number of estimates was regulated by the number of the bands. The court held that the plan was within the Penal Code definition of a lottery (section 323), for it was a "scheme for the distribution of property by chance" among persons paying therefor. While one man might possess better judgment and be more familiar with the extent of the sales of cigars than another competitor, yet the element of chance entered largely into the estimate of every person. It was chiefly a guess. The court further held that in order to constitute a transgression of the statute it was not essential that the distribution be exclusively by chance, but only that chance, rather than skill, "be the dominating element that determines the result of the game." Of similar import are Pub-

lic Clearing House v. Coyne, 194 U. S. 497–512 et seq., 24 Sup. Ct. 789, 48 L. Ed. 1092; Hudelson v. State, 94 Ind. 426, 48 Am. Rep. 171.

It has long been the policy of the state to regulate and restrict the sale of intoxicating liquors. One method of accomplishing this purpose is to prevent certain things being done in the place where the traffic is permitted to be carried on. In harmony with this general policy, as already noted, gambling is prohibited in such places (section 23, subd. 7) or the carrying on of any business or traffic "which is a violation of law." Section 31 of the act enumerates what are denominated illegal sales, and in subdivision e the prohibition against gambling is reiterated. This prohibitory legislation is subsidiary to the constitutional provision (article 1, § 9) which provides:

"Nor shall any lottery or the sale of lottery tickets, pool-selling, bookmaking, or any other kind of gambling hereafter be authorized or allowed within this state; and the Legislature shall pass appropriate laws .to prevent offenses against any of the provisions of this section."

There should be no endeavor to pare down the effect of this inhibition where it is patent that the scheme devised is an attempt to evade the tenor of the law. Subtract from the Yale Wonder Clock the element of chance in its operation, which is its enticing feature, and not one would be found connected with a saloon or place where liquor is sold. It is there as a gambling device, to foster the venturesome spirit of hazard, and, consequently, is within the condemnation of the statute.

The order should be reversed, with costs and disbursements of this appeal, and the petition revoking the liquor-tax certificate granted, with costs.

So ordered. All concur.