### PEOPLE v. STEIN.

(Court of Special Sessions. New York County. March, 1913.)

GAMING (§ 68*)—OFFENSES—GAMES PROHIBITED—SLOT MACHINE.

A machine for dispensing gum, whereby the player in return for a penny inserted in the slot receives one cent's worth of gum and has a chance of receiving more gum or candy, depending on the channel in which the penny falls, is a gambling device which renders one who permits its operation in his place of business guilty of keeping a room to be used for gambling contrary to Penal Law (Consol. Laws, c. 40) § 973, and who permits a boy under 16 to operate the machine guilty of permitting him to be in a situation likely to impair his morals under section 483.

[Ed. Note.—For other cases, see Gaming, Cent. Dig. §§ 140–162, 164, 165; Dec. Dig. § 68.*]

Information against Benjamin Stein for permitting a boy under 16 to be in a place likely to impair his morals and for keeping a room used for gambling. Defendant found guilty.

Charles S. Whitman, Dist. Atty., and Floyd H. Wilmot, Asst. Dist. Atty., both of New York City, for the People.
Nathan Folk, of New York City, for defendant.

DEUEL, J. The defendant was tried on an information containing two counts, one for permitting a boy under 16 years of age to be placed in a situation likely to impair his morals (section 483, P. L.) and the other for keeping a room to be used for gambling (section 973, P. L.). As a retail vendor of candy, stationery, and cigars, he permitted the installation, in his business premises, of a contrivance for dispensing gum by chance. It can scarcely be called a slot machine, because there is no machinery to be set in motion. A penny inserted in a convenient slot or opening falls by gravity and is guided by channels marked off by metal pegs into one of several receiving places designated, respectively, "G," "5," "10," "15." If it falls into "G," the player

gets one package of gum, into "5" five, into "10" ten, into "15" fifteen cents worth of gum. Assuming each package of gum to be worth one cent, the device held out as an inducement to every one, child or adult, the possibility of getting 5, 10, or 15 cents worth of gum for each cent dropped through the slot.

Another case (People v. Nahmias, 146 N. Y. Supp. 856) came up for trial almost coincidently with this case. Nahmias was similarly charged in two counts with impairing morals and keeping a room for gambling, by maintaining in his store an actual slot machine, which, being set in motion by dropping a cent in the slot, delivered a package of gum to the player, but it was represented that some of the packages contained a coupon, which, depending on its number, entitled the player, in addition to the gum, to from one to ten cents worth of chocolate candy. In all legal essentials the facts are the same, and a determination in either case must be controlling in the other.

Slot machine devices like those in question come into competition with the ordinary automatic vending machines, which are a great convenience to many people, and differ from them in that into the latter mechanical genius has inserted various complicated devices which promise the purchasing operator, not only a definite return for the coin needed to set the machinery in operation, but an alluring opportunity to get some multiple thereof, 5, 10, and 15 in the Stein case, and not exceeding 10 in the Nahmias case. And these multiple recurrences, sometimes if not always, are within the control of the party interested in the profits, as shown in the Yale Wonder Clock, to which reference will later be made.

Even if the present contrivance were not subject to like manipulation, ordinary intelligence should convince any player that the ingenuity of the inventor was equal to the problem of insuring a profit to the machine during a given series of plays. This, however, would have slight weight with boys and girls, for whose patronage the devices now in question were specially constructed, for the tempting character of the bait with which each was set, the possibility of getting 10 or 15 times the amount hazarded, would entrap every penny an average boy possessed. The inducing cause to operate either device is not to get a penny's worth of gum for present enjoyment, but the chance of getting 10 or 15 times as much as the price of the play.

This seemingly stamps the operation as "gambling" under the reasoning of the Court of Appeals in Lyman v. Kurtz, 166 N. Y. 274, 59 N. E. 903, and would do so fully but for differences in the respective slot machines. In that case the player stood to lose the amount hazarded if he did not win one of the money prizes offered. Here he gets a package of gum with every play. The court said (166 N. Y. 279, 59 N. E. 905):

"The evidence shows the machine to be a contrivance, or apparatus, by which it is determined who, as between the player and the proprietor, is the winner, or loser, of the money hazarded. The player stakes, or hazards, his money on a chance, and that is sufficient to make out the gambling. Within the general understanding, such a machine is a gambling device."

This reasoning, however, did not suffice in Cullinan v. Hosmer, 100 App. Div. 148, 91 N. Y. Supp. 607, to forfeit a liquor tax certificate

for having a slot machine on licensed premises which, being operated by deposit of a nickel, gave out one five-cent cigar and possibly three, because the operators "could not lose anything and might    *    *    * gain two cigars. There was absent any element of chance and resulting loss so far as he was concerned." This was in 1905, and one Justice dissented.

The following year that court, in the case of Matter of Cullinan, 114 App. Div. 654, 99 N. Y. Supp. 1097, reversed itself, largely on the ruling of the Court of Appeals in People v. Lavin, 179 N. Y. 164, 71 N. E. 753, 66 L. R. A. 601, 1 Ann. Cas. 165. Besides the dissenting justice, there were two others who had participated in the Hosmer decision. The Peck Case was another application to revoke a liquor tax certificate for having a slot machine on licensed premises, the Yale Wonder Clock, to which reference previously has been made, and was described by the court as follows:

" "This machine  *  *  *  contained  *  *  *  four tubes in which tickets were placed to be rung up upon putting a nickel in the slot on the side of the machine. The tickets were placed in the tubes by the proprietor, and every time the machine was operated a metal disc or ticket was discharged. On the face of the machine arranged horizontally were four glass discs colored white, blue, green, and red, respectively, and whenever the metal ticket or disc was ejected from the machine one of the glass discs was illuminated. The white entitled the player to 5 cents in trade, the blue 10 cents, the green 15 cents, and the red 25 cents. The discs were inscribed correspondingly, 'Good for five cents in trade,' and so on."

In all essentials this machine corresponds to the one now in question and in like respects differs from the one involved in the case of Lyman v. Kurtz. In reversing its former position and in determining that the presence of this machine on licensed premises was sufficient justification for a forfeiture of the liquor tax certificate, the court was unanimous. As reasons for its decision and as a judicial guide for ascertaining the obnoxious character of all similar devices, Mr. Justice Spring said:

" "The chief element of gambling is the chance of uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. In using the present machine, we may assume the player cannot lose. By far the greater majority of the checks called in trade for the precise sum deposited in the slot. If every ticket represented five cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel he ventures, and that is the vice of the scheme. If he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling it is not important who may be the loser."

The most recently reported decision on the subject is People ex rel. v. Jenkins, 153 App. Div. 512, 138 N. Y. Supp. 449.

This slot machine was located in a cigar store. For the first nickel the machine indicated the precise results that would follow—a package of gum and a specified number of trade checks to be liquidated in the store. These were delivered to the player, and then the machine indicated that the next play would produce a package of gum with or without trade checks, which presented an uncertain option and "has in it such an element of chance as constitutes gambling.  *  *  *"

In fact, this element of chance only gives the machine its value, and that its use is within the direct prohibition of the Penal Law, § 973, seems clear.

In the light of the foregoing decisions, which are controlling, all doubt, if such at any time existed in the mind of the court as to the legal character of the vending device which the defendant permitted to be installed in his store for the indiscriminate use of adults and children, must disappear, and the contrivance itself must be declared to be a gambling device.

The questions presented have been argued ably and instructively by respective counsel in the briefs submitted. Aside from being a menace to the morals of childhood, the presence in the city of slot machines possessing similar characteristics endanger large capital invested in legitimate business and are stimulative of both civil and criminal prosecutions. The justices of this court, by the prosecutions instituted, are in a position to know that such devices are on the increase. Some are specially adapted to childhood, and the favorite location for them is in a candy store near a public school. Others are constructed so as to appeal to adults, and chiefly are to be found in cigar and liquor stores. Some are cheaply made and of simple construction, like the exhibit in this case, and others are of elaborate outside encasement and intricate internal construction. To the ordinary unthinking business man they appear as an innocent or harmless novelty that may amuse customers and stimulate trade; hence they can be easily placed by owners who share in the profits.

Section 970 of the Penal Law makes ownership, agency, or superintendency of "a place, or of any device, or apparatus, for gambling" a felony; section 973 declares that "any corporation * * * or individual, who keeps a room * * * or any part thereof" for gambling is guilty of a misdemeanor. In addition to the criminal penalty, the Liquor Tax Law declares a forfeiture of the tax certificate, ipso facto, upon conviction for having such a gambling device on licensed premises, and independent thereof permits a forfeiture of the certificate through a civil proceeding. These facts and circumstances seemingly present a condition that may be dealt with more advantageously to the public by a formal discussion than by a perfunctory decision.

All the motions of counsel should be denied, and the defendant should be found guilty. All concur.