## Commonwealth v. Hollands.

*Criminal law — Gambling devices — Nickel-in-the-slot machines — Act of March 31, 1860.*

1. The term gambling device has no settled and definite meaning, it is not defined by the common law, and often statutes fail to define it.

2. A gambling device has been judicially defined as an invention to determine who wins and who loses when money is risked on a contest or chance of any kind.

3. Gambling devices include all instruments, implements, devices or means which are used in unlawful gaming.

4. Nickel-in-the-slot machines are included among gambling devices.

5. The generally accepted rule is that where one playing a slot machine stands to win or lose money, trade or checks by hazard or chance, the machine is a gambling device. It is a gambling device where its operation is such that, although the player in any event will receive something, he stands a chance to win something in addition.

6. If a device appears to comply with the letter of the law, but violates its spirit, it still must be held to be a gambling device.

7. Wherever the element of chance enters into the operation of a nickel-in-the-slot machine, such machine is operated in violation of section 55 of the Act of March 31, 1860, P. L. 382.

Motion in arrest of judgment and for new trial. Q. S. Dauphin Co., June Sess., 1923, No. 67.

*Philip S. Moyer*, District Attorney, for Commonwealth.

*Beidleman & Hull*, for defendant.

WICKERSHAM, J., Jan. 28, 1924.—The indictment charges that the defendant, "On the 28th day of May, 1923, . . . in a certain house, unlawfully, wilfully and maliciously did set up and establish, and cause to be set up and established, a certain game and device of address and hazard, with cards, dice, . . . and other instruments, . . . at and upon which money and other valuable things were then and there unlawfully designated to be, and actually were, played for, staked and betted upon."

It also contained four other counts, charging the same offence as having been committed in the different manners set forth and prohibited in the act of

4 D. & C.

assembly hereinafter quoted. To this indictment the defendant pleaded "not guilty," and the case proceeded to trial.

It appeared that the defendant set up in his cigar store in the City of Harrisburg a "nickel-in-the-slot machine," which was brought into court and exhibited to the jury, upon which appeared the following directions: "For five cents you buy a package of mints and profit-sharing coupons. Before you make your purchase read the indicator above to see exactly what you buy for your nickel. Each purchase is absolutely certain; void of risk or element of chance; save the coupons, they are exchangeable for merchandise the same as trading stamps: Keeney's Refresh-Mints—A Mint that refreshes. Note: Government excess tax is paid on each vendee and mints before shipped."

Counsel for the defendant pulled the lever a number of times, when the indicator on the machine pointed to "no." Before pulling the lever, each time he dropped five cents into the slot and each time received a package of mints. When the indicator stopped at 4, upon dropping a nickel and pulling the lever, four discs dropped on the candy side in addition to receiving the package of mints. When the indicator pointed to "no," a nickel dropped in the slot produced only a package of mints, and this was the result each time a nickel was dropped in the slot, the lever worked, and the indicator was again at "no." When the indicator pointed to 2, and the nickel was dropped in the slot, in addition to the package of mints, two discs dropped out. It was also stated that the highest amount that any one could get by playing the machine once was $1 in checks and a package of mints. These discs were exchangeable for their value of five cents in merchandise at the store of the defendant.

After the evidence was all in, by agreement of counsel, we directed the jury to return a verdict of "guilty," whereupon a motion was made in arrest of judgment and for a new trial.

It is contended by the defendant that there is no game of chance in the operation of this machine. The person dropping the nickel in the slot knows exactly what he will get before the nickel is dropped. If the indicator is at "no," all he gets is a package of mints; if the indicator points to 4, he knows that, in addition to the package of mints, he gets four discs, which can be exchanged at the store for the value of five cents each, as we understand the evidence.

The indictment is based upon section 55 of the Act of March 31, 1860, P. L. 382, which provides, *inter alia*, as follows: "That if any person shall set up or establish, or cause to be set up or established, in any house, room, . . . or other place whatsoever any game or device of address or hazard, with cards . . . or any other instrument, article or thing whatsoever, heretofore, or which hereafter may be, invented, used and employed, at which money or other valuable thing may or shall be played for or staked or betted upon, . . . shall be guilty of a misdemeanor."

The Commonwealth contends that the machine in question constitutes a "gambling device," being "any other instrument . . . heretofore or which hereafter may be invented," whereby persons using the machine may lose or win money; in other words, that "playing the machine" constitutes gaming or a game of chance prohibited by the act of assembly above quoted.

The term "gambling device" has no settled and definite meaning; it is not defined by the common law, and often the statutes fail to define it. It has been judicially defined as an invention used to determine the question as to who wins and who loses that risk their money on a contest or chance of any kind. It is evident that gambling devices include all instruments, implements,

Commonwealth v. Hollands.

devices or means which are made and used in unlawful gaming: Lyman v. Brucker et al., 56 N. Y. Supp. 767-770; State v. Grimes, 49 Minn. 443, 446, 52 N. W. Repr. 42. Among such gambling devices is included the so-called "nickel-in-the-slot machines." Whatever form this machine may assume, however much the inventors and manufacturers may endeavor to put into the market a machine which complies at least with the letter of the law, the rule generally accepted is that, where one playing a slot machine stands to win or lose money, trade or checks by hazard or chance, the machine is a gambling device. The machine is a gambling device where its operation is such that, although the player in any event will receive something, he stands a chance to win something in addition: 27 Corpus Juris, 989.

Our attention has not been directed to any Pennsylvania cases which squarely rule the matter now pending before us. The learned district attorney has referred us to two cases which throw a strong sidelight upon the issue pending, to wit:

"When the thing done is substantially that which is prohibited by statute, it falls within the same simply because, according to the true construction, it is the thing thereby prohibited.

"Section 55 of the Criminal Code, making it a misdemeanor to set up 'any game or device of . . . hazard' where money or any valuable thing is or may or shall be 'played for or staked or betted upon,' covers punch-boards:" Com. v. Freedman, 28 Dist. R. 1034.

The facts in the above case, decided by President Judge Endlich, differ very materially from the facts developed in the case at bar, but the principle is the same, to wit, that if a device appears to comply with the letter of the law, but violates its spirit, we must still hold that it is a gambling device.

In Com. v. Jones & Nicely, 15 Pa. Justices' Law Repr. 1, it was held:

"Gambling means the act of a person who puts up money or other valuable thing upon the chance of the happening of something unknown to the player, through which he will get money or other valuable thing, or even a chance to do so, for less than cost.

"Keeping gum slot machines is a violation of the act of assembly under which defendants were indicted."

The facts in this case appear to be similar to the case at bar. We quote from a paragraph of the decision of President Judge Whitehead, found on page 2 of said report, which has our approval:

"It is well known that this social evil, if allowed to go unrestricted, would result in the impoverishment of many and lead to the commission of crimes, and to prevent such a condition is the object and purpose of these statutes relating to gambling. Since the enactment of these statutes, many crafty and ingenious persons have endeavored, through ingenious games, devices and instruments, to accomplish the same results as have been condemned, but in such a way as to keep within the law.

"The machines used by the defendants in the case are unquestionably ingeniously arranged so as to attract the young and sometimes the old, because of the possibility of getting more than is shown upon the face of the machine. Keeping in mind the fact that the indicator points to what one will get, and that one is sure to get the thing indicated, and also keeping in mind that when one drops the nickel in to get the gum or check indicated by the indicator, that the indicator immediately changes and points to the same or something else, and that this gives one the opportunity, upon depositing another nickel or check, to get from one to twenty checks, each worth 5 cents in merchandise, are we irresistibly led to the conclusion that the player is operating for two

4 D. & C.

purposes, viz., first, to get the thing indicated, and, second, the opportunity to get very much more than the thing indicated, namely, twenty checks?"

This language appears to us to apply to the case at bar and to lead us to the conclusion that the machine exhibited before the jury in this case is in fact a gambling device.

Turning now to the decisions of other states, we find Ferguson v. State of Indiana, 99 N. E. Repr. 806, also reported in 42 L. R. A. (N. S.) 720, is parallel to the case at bar. The machine in that case was operated by the player depositing a nickel in the slot and turning a crank, whereupon the machine would automatically pay the reward. The machine would always pay to the player a package of chewing gum of the retail value of 5 cents, and sometimes, in addition thereto, would pay one or more checks. These checks could be used in playing the machine in the same manner as nickels were used. By means of indicators, the player was informed as to what the reward would be before each play, but there was no method of knowing what would be the reward of subsequent plays. Thus, if, before being played, the machine indicated that a package of gum would be the reward, after being played, it might indicate that on the next play a package of gum and one or more checks would be the reward.

It would seem from this description that the machine the Supreme Court of Indiana had under consideration corresponded exactly with the machine exhibited to the jury in the case at bar. It is quite true that when the indicator showed "no," the person dropping the nickel in the slot knew he would only receive a 5-cent package of mints; but there was no way of knowing what the indicator would show the next time. The person dropping the nickel in the slot might reasonably expect that the next time the indicator would point to 2 or 4 or more, in which case certainly the person playing the machine would not walk away, but would again drop a nickel in the slot in order to get the reward in addition to the package of mints, and therein lies the game of chance in this machine.

After quoting from Lang v. Merwin, 99 Me. 486, 59 Atl. Repr. 1021, and from In re Cullinan, 114 App. Div. 654, 99 N. Y. Supp. 1097, Mr. Justice Morris, delivering the opinion of the Supreme Court of Indiana, proceeds: "The above opinions are in accordance with the weight of authority on the question as to what constitutes a gaming device, and rest on sound reasoning. In the present case, the fact that the machine would indicate the reward before it was played makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the device at which section 2474 is directed. The inventor of the machine has endeavored 'to adhere to the letter of the law while violating its spirit,' and, as always must be the result, has failed."

In Lang v. Merwin, 99 Me. 486, it was held: "A slot machine, so operated that the operator putting into it a nickel coin receives, in any event, a cigar of the value of his coin, and also stands to win by chance additional cigars without further payment, is a gambling device."

It was agreed that the defendant was the possessor of a nickel-in-the-slot machine which he operated in his cigar store. The machine, so far as necessary to describe it, consisted of a cylinder in five sections, made up so as to revolve upon a shaft. Upon the outer surfaces of the sections were representations of playing cards. When the sections were at rest, five cards would

be in sight. By pressing a lever, the sections were made to revolve, and the mechanism of the machine was such that the sections revolved at different rates of speed, no two alike. The points at which the sections would severally stop, and the combinations of cards which would thereby be left exposed to view, was purely a matter of chance. The machine was played by those who resorted to the defendant's store according to the following scheme: The player deposited a nickel in the slot of the machine and pressed the lever. The player, in any event, was entitled to a 5-cent cigar in the store. If three cards of the kind were exposed after the sections ceased to revolve, the player was entitled to two additional cigars; if a "straight," four additional cigars; if a "flush," six additional cigars, and so on. By this arrangement the player, for 5 cents placed in the machine, received the same returns that he would if he had paid 5 cents on the counter. And he might receive more.

The only difference between the machine in the Maine case and the one at bar is that when the indicator pointed to "no," the person dropping the nickel in the slot knew he would only receive a package of mints; but there was a chance that the next time the indicator might point to 2 or 4 or more, in which case, by again depositing a nickel, the player would not only receive a package of mints, but he would also receive discs which had purchasing value in that store. Commenting upon the case, Mr. Justice Emery, of the Supreme Judicial Court of Maine, said (59 Atl. Repr. 1022) : "In the case before us it is absurd to assume or concede that the person putting his 5 cents into the machine may be doing so merely as a means or mode of buying a 5-cent cigar. It is absurd to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance, it would not be used. . . . The element of chance is the soul of the transaction. The operator hopes by chance to get something for nothing. The dealer hopes chance will save him from giving something for nothing. Each is pecuniarily interested, adverse to the other, in a result to be determined solely by chance. To use the language of the street, 'it is a gamble' which will win, and we have no doubt the transaction is 'gambling' in the statutory sense of the word."

With what peculiar force does the language of the Supreme Judicial Court of Maine apply to the case at bar. It is absurd to say that one would use the machine in question if all he hoped to get was a 5-cent package of mints. Why put a nickel in the slot to get a package of mints, when he could buy them without doing so? Certainly the machine would not be used if the person playing it did not hope that the next time he would get something more than a mere package of mints for his five cents.

In re Cullinan, 114 App. Div. 654, it was said by Spring, J., delivering the opinion of the Supreme Court, Appellate Division, Fourth Department of the State of New York (see page 1098) :

"The chief element of gambling is the chance of uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. In using the present machine, we may assume that the player cannot lose. By far, the greater majority of the checks called in trade are for the precise sum deposited in the slot. If every ticket represented five cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel he ventures, and that is the vice of the scheme. If he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling, it is not important who may be the loser. . . .

"The inventor of the present machine has attempted to obviate the criticism to which other slot machines have been subjected by cunningly returning to

4 D. & C.

the player operating the machine a check or ticket which secures to him in cigars or liquor the amount of his stake. Like most endeavors to adhere to the letter of the law, while violating its spirit, he cannot succeed. The present device attractively ministers to the gambling humor the same as other slot machines of substantially similar design. Unless it did this, it would not entice the customer. If in every instance it actually returned five cents in coin to the player, no one would pretend that the device would attract any one. So if, on every cast a ticket was run out calling for five cents in trade, no person would take the trouble to drop a nickel in the slot. It is the hazard—the chance of winning more than the sum ventured—which draws people to the machine, and that element was the conspicuous one retained in its mechanism, and it is that which brings it within the condemnation of the statute forbidding gambling in a place where liquor is sold."

The principle clearly deducible from the above cited authorities is this, that wherever the element of chance enters into the operation of the so-called "nickel-in-the-slot machine," such machine is operated in violation of the statute prohibiting the use of "any other instrument, article or thing whatsoever heretofore or which may hereafter be invented, used and employed, at which money or other valuable thing may or shall be played for or staked or betted upon."

We are of the opinion, after considering the great weight of authorities in this and other states, that the nickel-in-the-slot machine produced in evidence in this case, and for the operation of which the defendant was indicted, is a gaming or gambling device, and its use is in violation of the statute of the Commonwealth of Pennsylvania hereinbefore quoted.

The motion in arrest of judgment and for a new trial is, therefore, overruled, and the district attorney may call the defendant for sentence at his convenience.

From George R. Barnett, Harrisburg, Pa.