## Buckley & Sheets v. Butler et al.

*Gambling devices—Vending slot machines.*

1. A vending slot machine which holds out an inducement to play in the expectation that by the play the machine will be set to indicate a larger reward on the following play, is a gambling device.

2. The vending slot machine in the case at bar, in size and shape, resembled a cash register. The player put a nickel in the slot, and thereupon pulled a lever, which caused the word "No," or numerals ranging from 2 to 20, to appear in a small window placed in the centre of the device. If the word "No" appeared, the player received a package of mints; if any numeral appeared, by depositing another nickel he could get, in addition to the package of mints, from another compartment of the machine, a number of slugs or discs equal to the number shown in the window; these slugs or discs were worth five cents each in trade in the store where the machine was located. It will thus be observed that the player had a chance on his first play of bringing about a combination which would show by the deposit of the second nickel that he might obtain another package of mints, plus an uncertain number of slugs or discs. On a bill filed by the owners to restrain the Director of Public Safety and the police officers from seizing and confiscating the machines: *Held*, that the machines were gambling devices, and the bill was dismissed.

Bill for injunction to restrain Director of Public Safety et al. from seizing and confiscating certain vending machines as gambling devices. Municipal Court, Phila. Co., March T., 1924, No. 769.

*Harry M. Berkowitz* and *A. M. G. Newton*, for complainants.

*Joseph P. Gaffney*, City Solicitor, and *H. Eugene Heine*, Assistant City Solicitor, for defendants.

LEWIS, J., April 2, 1924.—The bill filed in this case avers in substance the following facts:

The plaintiffs are engaged in the business of vending mint candies in various forms through the aid of certain "vending machines," which machines have been installed in various stores in the City of Philadelphia. That these machines are operated by the insertion of a coin in a slot, and, after the pulling of a lever, the prospective purchaser receives a package of mint candy.

"That upon said vending machines is described what the prospective purchaser is to receive, the price to be paid, and acquainting him with what he is to receive in return before he deposits his coin."

The bill in substance complains of the conduct of the Police Department in seizing and confiscating the vending machines and interfering with complainants' business, and prays for an injunction to restrain the officials of the Police Department of the City of Philadelphia and its police officers from "seizing and confiscating the vending machines of the complainants."

4 D. & C.

An answer was filed by the City Solicitor, representing the defendants, setting up in substance that the machines of the complainants are not *bona fide* mint vending machines, but are cleverly devised gambling devices.

Testimony was taken under an agreement that the same shall be considered as if taken upon final hearing. Requests for findings of facts and conclusions of law have been submitted by both sides.

The court adopts as its findings of facts those requests of either complainants or defendants which are affirmed and as they appear in this opinion.

### Discussion.

The machine of the complainants, which was offered in evidence, may be described briefly as follows: It is an instrument which, in size and shape, resembles an ordinary cash register. It is operated by a lever after the deposit of a nickel in the slot, which will cause the word "No" or numerals, ranging from 2 to 20, to appear in a small window located directly in the centre of this device. If the word "No" appears, the player receives only a package of mints. If any numeral appear, the player, by depositing another nickel, will receive, in addition to a package of mints, from another compartment in the machine, a number of slugs or discs equal to the number shown in the window. These slugs or discs are worth 5 cents in trade in the store where the machine is located.

It is strenuously urged on behalf of the complainants that because the customer or player receives at all times a package of mints, and because he is acquainted, before depositing a second nickel, with how many, if any, discs or slugs he will receive, no element of gambling enters into the operation of the machine.

Complainants further argue that the vending machine involves no element of chance; that each play transaction is a completed transaction; that it shows precisely what the player is to receive and what the machine is to give.

The answer to this contention may be well stated in the language of Spear, J., in a similar case, that of State *v.* Googin, 117 Me. 102: "While each play is a completed act, it may be only preliminary to the future play by the same person which will bring forth the coveted prize, the chance in this operation being, not in the visible play, which may show only a package of gum, but in the invisible play, by which the machine may turn up a visible prize to be captured on the next play. If a play turns up no premium, neither party loses. If it does turn up a premium, then the machine loses on that particular play."

While it is true that the customer or player knows in advance what he is going to receive, he does not know, and he has no means of knowing in advance, what the indicator will next show as a result of his play. It may be only mints, or it may be mints plus any of the figures showing the number of checks or slugs which he will receive. Every time a player deposits a nickel and pulls the lever, he has the certainty of getting a package of mints, and the number of slugs, if any, shown in the indicator, but he has also the chance of thereby bringing about a combination which will show that by the deposit of another nickel he may obtain another package of mints plus an uncertain number of discs or slugs.

Some courts have held a slot machine is not a gambling device where the element of chance is wholly absent, as where the machine indicates with absolute certainty, before the player deposits the coin or the check, what he will receive, but the great weight of opinion is in the direction of holding these contrivances to be gambling devices: Meyer *v.* State, 51 L. R. A. 496; Lang *v.* Merwin, 99 Me. 486; In re Cullinan, 99 N. Y. Supp. 1097; The People

v. Jenkins, 153 Appel. Div. Rep. (N. Y.) 512; Ferguson v. State, 178 Ind. 568; State v. McTeer, 149 Tenn. 535, and Allen v. State, 178 Ky. 250.

And the rule laid down in the cases cited is to the effect that these machines are gambling devices, upon the theory that they hold out "an inducement to play in the expectation that by the play the machine will be set to indicate a larger reward the following play:" 27 Corpus Juris, 990.

In a well-considered opinion in the case of Rex v. Gerasse, 29 Dom. L. R., Canada, 523, an almost identical vending machine was held to be a gambling device. The court there uses this language: "Independently of authority, it (the case) is equally strong. The machine is cunningly devised to lure the player on by the prospect of getting something for nothing. There is always a chance that the player, by the expenditure of 10 cents, may obtain not only two packages of gum, but checks worth, at the counter, anywhere from 10 cents to a 100 cents as well. The player is induced to continue by the fact that he is getting 5 cents' worth of gum each time he plays, with always the chance just ahead that the next presentation of the indicator will give him a large profit. If the machine did not afford that chance, it would not be used. If there was only the chance of getting gum every time, there would be no inducement to operate the machine. It is the hazard, the chance of winning more than the sum ventured, which attracts people to the machine. It is calculated to minister to the gambling humor, and therein lies its vice."

And in The People v. Jenkins, 153 Appel. Div. Rep. (N. Y.) 512, it is said: "It thus appears that with the dropping of a nickel the depositor always gets his package of gum and always knows the exact number of trade checks which he will receive for that nickel. The element of chance lies in the fact that, upon the turning of the lever and the deposit of the gum and number of checks indicated, there is further indication of how many trade checks, if any, may be obtained upon the dropping of the second nickel. The number of trade checks, however, which can be obtained upon the dropping of the second nickel is only indicated after the first nickel has dropped and the lever turned. Thus, in addition to the gum and the trade checks indicated as the certain receipts upon the dropping of the nickel, is given an option to obtain a package of gum and an uncertain number of trade checks upon the dropping of the second nickel. That this uncertain option has in it such an element of chance as constitutes gambling can hardly be questioned."

In Ferguson v. State, 178 Ind. 568, it was held that a machine operated by depositing a nickel in a slot and then turning a crank, whereupon it automatically pays a reward, consisting of a package of chewing gum and sometimes, in addition thereto, one or more checks that can be used in the slot instead of nickels, is a gambling device, although indicators are attached which inform the player as to the reward to be received for each play. And, quoting from the opinion found In re Cullinan, 99 N. Y. Supp. 1097, the court said: "The chief element of gambling is the chance or uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. . . . If every ticket represented 5 cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel he ventures, and that is the vice of the scheme. If he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling, it is not important who may be the loser. . . ."

In the case at bar the fact that the machine would indicate the number of checks or slugs before it was again played makes no difference. The inducing cause for each play is the chance that by that play the machine would be so set and its mechanism so revolved as to indicate that it would pay checks on

4 D. & C.

the following play. In a word, the thing that attracts customers or players to this so-called vending machine is the chance that in the future and if played again he would receive something for nothing. It is not the package of mints that the player is after, but the chance that by the deposit of an additional nickel the next play may turn up a reward to him of any amount up to a dollar, which he can receive by depositing one more nickel. It seems to us that the mere statement of the operation of the vending machine in question is conclusive of its being a gambling device.

The only case in Pennsylvania upon the subject, apparently, is a case decided in Lycoming County in 1916, and is that of Com. v. Jones and Nicely, 15 Pa. Justices' Law Repr. 1. The court, in deciding that a similar machine was a gambling device, said: "The player on these machines puts up money or checks of value, first to get gum or checks, and, second, upon the chance of the happening of something unknown to the player, through which, by an additional payment, he can get more than he paid."

Within the past few weeks, in the case of Triangle Novelty Co. v. Richard E. Enright, a Commissioner of Police of the Police Department of the City of New York, the Appellate Division of the Supreme Court, Kings County, New York, vacated an injunction previously granted in the case of a machine identical with the one offered in evidence in the case at bar, and, in doing so, uses the following language: "The element of gambling is the uncertainty as to what will appear next after the insertion of each coin. In other words, the operator receives a package of mint and a number of premium checks indicated. The uncertainty is the number of premium checks, if any, that will appear upon the next turn of the machine."

There was testimony in the case at bar that these machines were used by both children and adults. For many years it has been the settled policy of the law of Pennsylvania that gambling devices of any nature or description are a menace, in that they are a social evil which the State ought, with its strongest arm, to suppress. This policy has been crystalized by the passage of section 55 in the Penal Code of March 31, 1860, P. L. 382, wherein it is provided that any one setting up "any game or device of address or hazard with cards, dice, billiards, shuffleboard, or any other instrument, article or thing whatsoever, heretofore or which hereafter may be used and employed, at which money, or other valuable things, may, or shall, be played for, or staked upon, shall be guilty of a misdemeanor."

The device or machine might, at first glance, appear to be an innocent mint-vending machine; but, upon further reflection and examination, the conclusion becomes irresistible that it is a game of chance and "determined entirely or in part by lot or mere luck, and in which judgment, practical skill or adroitness have honestly no office at all or are thwarted by chance:" 27 Corpus Juris, 968.

The inventive genius of the individual who put these machines upon the market ought not to be permitted to be used as a means of contravening the settled policy of our Commonwealth. Daily the courts meet with cases where persons perhaps adhere to the letter of the law while violating its spirit. Just as in all other instances, in the present instance such an attempt must fail. We cannot shut our eyes to a condition of affairs which will permit the extensive distribution of these machines in residential neighborhoods to lure the nickels from the pockets of the young, as well as of the old.

Upon the facts and the law as we find them, we conclude that the machine in question is a gambling device and that its use is contrary to the laws of our State. The injunction prayed for is refused and the bill dismissed, with costs to the defendants.