# CASES DETERMINED

IN THE

# SUPREME COURT

AT THE

## MARCH TERM, 1902.

PRESENT:

THE HON. THEO. BRANTLY, Chief Justice.

THE HON. WILLIAM T. PIGOTT, ⎫
⎬ Associate Justices.
THE HON. GEORGE R. MILBURN, ⎭

STATE, RESPONDENT, v. WOODMA. T, APPELLANT.

(No. 1,742.)

(Submitted January 21, 1902. Decided March 10, 1902.)

*Gambling—Nickel in the Slot Machines—Distribution of Cigars — Constitutional Law—Class Legislation — Statutory Construction.*

1. Conceding that Laws of 1901, p. 166, Sec. 2, punishes proprietors of games of chance, while patrons of the game enjoy immunity, it is not unconstitutional as class legislation, no exception being made of the persons who fall within its operation.

(343)

2.  Laws of 1901, p. 166, Sec. 2, prohibits the conduct of games of chance, and, among others, that of running a nickel in the slot machine, "for money, checks, credits, or any representative of value, or for any property or thing whatever." *Held,* that a nickel in the slot machine, involving in its operation the element of chance as to whether the player obtained in cigars more or less than the value of his money, was prohibited thereby.

3.  The rule of construction that, where general words follow particular ones, they must be construed as applicable to things of the same class, is a rule to be used as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention of a statute or of confining its operation to narrower limits than the legislature intended.

*Appeal from District Court, Lewis and Clarke County; Henry C. Smith, Judge.*

ELMER E. WOODMAN was convicted of running a nickel in the slot machine in violation of the law, and he appeals. Affirmed.

*Messrs. Nolan & Loeb,* for Appellant.

The law under consideration is unconstitutional, for the reason that it is class legislation. (*In re Langford,* 57 Fed. 574.) Assuming, however, that the constitutional objection urged is not well taken, we insist that under well settled rules of statutory construction, the use of the nickel in the slot machines for the distribution of merchandise or cigars is not prohibited by the law under consideration. It seems to us that the doctrine of *ejusdem generis,* universally recognized, would exclude from the operation of this law the use of the nickel in the slot machines for the distribution of cigars. (*People v. New York,* 84 N. Y. 565; *People v. Richards,* 108 N. Y. 137; *State v. Gilmore,* 11 S. W. Rep. 620; *Com. v. Kemmerer,* 13 S. W. Rep. 108; *State v. Black,* 75 Wis. 492; *Alabama v. Montague,* 117 U. S. 609; *Shirk v. People,* 121 Ill. 65; *Rennick v. Boyd,* 99 Penn. St. 555; *McDade v. People,* 29 Mich. 44; *McIntyre v. Ingraham,* 35 Miss. 53; *City of Lynchburg v. Norfolk, etc.,* 56 A. M. Rep. 592, 80 Va. 237; *State v. McGarry,* 21 Wis. 503; *American, etc. Co. v. Moore et al.,* 5 Mich. 368; *White v. July, etc.,* 34 Ga. 199; *Com. v. Dejardin,* 126 Mass. 47; *City of St.*

*Louis* v. *Laughlin,* 49 .Mo. 559; *Power* v. *Commissioners,* 7 Mont. 86.)

A penal statute must be strictly construed, and no consideration of public policy will allow a court to construe a statute to embrace an offense not clearly within its terms. (*Ming* v. *Truett,* 1 Mont. 326; *State* v. *Hays,* 13 Mont. 119.)

*Mr. James Donovan, Attorney General,* for the State.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was charged by information with a violation of the Act of the Seventh Legislative Assembly (Laws 1901, p. 166), by willfully and unlawfully running and conducting, and permitting to be run and conducted, a certain nickel in the slot machine for cigars, in his cigar store in the city of Helena. A general demurrer was interposed to the information, and overruled. Thereupon the defendant entered his plea of not guilty. A trial was had, which resulted in a verdict of conviction. A motion in arrest of judgment was overruled, and the defendant was sentenced to pay a fine. The facts submitted to the jury were embodied in an agreed statement, signed by counsel, and are as follows: "On the 23d day of September, 1901, Elmer E. Woodman was running a cigar store in the city of Helena, Lewis and Clarke county, Montana. On said day he had on his counter what is known as a 'nickel in the slot machine.' This machine is a contrivance which has a pack of cards on rollers, exhibiting five cards at a time, and with an aperture for the deposit of a nickel. When the nickel is deposited a spring is pressed, which sets the roller revolving, and when the revolution ceases five cards are brought into view out of the fifty-two cards in the pack. Under rules which govern the machine, if in those five cards thus appearing a pair of kings appears, the player gets one cigar; if a pair of aces, two cigars are paid; if two pairs are shown in the five cards, the player gets two cigars; if three of a kind are shown, the player gets three

cigars; if a straight (that is, five cards of consecutive numbers) or a flush (that is, five cards of the same suit) is shown, the player gets five cigars; if a full hand (that is, three of one kind and a pair) is shown, the player gets ten cigars; and if a straight flush (that is, five cards of consecutive numbers of the same suit) is shown, the player gets twenty-five cigars; and if a royal flush (that is, an ace, king, queen, jack, and ten spot of the same suit) is shown, the player gets one hundred cigars for five cents. If of the five cards then exhibited in the manner above set forth none of the above combinations appear, the player gets nothing; but the player takes the chance of getting for five cents one cigar, or for five cents he may get two cigars, or for five cents he may get three cigars, or for five cents he may get five cigars, or for five cents he may get ten cigars, or for five cents he may get twenty-five cigars, or for five cents he may get one hundred cigars, or for five cents he may get nothing. The cigars distributed sell for and are worth twelve and one-half cents each.

On the 23d day of September, 1901, Knute Opheim went into the store of Elmer E. Woodman, and commenced playing the nickel in the slot machine above described. On this occasion he played ten nickels. For some of said nickels he received nothing whatever. With some of the nickels the cards appearing were in such combinations that he got nothing whatever, and in one instance the combination of the cards was such that for the nickel he got two cigars. On the same day August Fack put one nickel into the slot machine and got nothing whatever, and he put in a second nickel and two pairs of cards were exhibited, and he got two cigars. On the third nickel placed in said slot machine he got nothing whatever. On the fourth nickel he got nothing whatever. On the fifth nickel so placed in said slot machine he got three cards of the same kind, and received three cigars, making a total of five cigars that he got for the five nickels that he deposited. Ed. S. Walker deposited several nickels in said machine on the above-named date, and received nothing whatever for the same. Others on the same

occasion deposited nickels in the said machine, pressed the lever, the cards revolved, but they received nothing whatever for the money so deposited. Others deposited nickels in the said machine, and the cards so appeared that they received cigars greater in value than the nickels so deposited. No checks of any kind were used or issued by the defendant Elmer E. Woodman while said machine was being played. This machine was placed, operated and conducted in the city of Helena, Lewis and Clarke county, state of Montana. At the time of the passage of the law under which this prosecution is brought, there were in use and operation in the city of Helena and elsewhere in Montana nickel in the slot machines of different kinds, in the operation of which the player was paid in money instead of cigars; that is, money exclusively."

The defendant has appealed from the judgment, and, not challenging the sufficiency of the information in other respects, presents for determination two questions raised by his demurrer and motion in arrest of the judgment upon the validity and construction of that section of the statute under which the conviction was had. These questions are: (1) Is section 2 of the Act unconstitutional because it is class legislation? And, (2) admitting the constitutionality of this section, does the use of a nickel in the slot machine for the distribution of cigars, as shown by the facts in this case, fairly fall within its terms?

1. The Act is entitled "An Act to prohibit gambling within the state of Montana, to provide penalties for violations of this act," etc. The parts of it pertinent here are the following:

"Section 1. Every person who deals plays, carries on, opens or causes to be opened, or who conducts or causes to be conducted, either as owner or employee, any game of monte, lansquentet [lansquenet], rouge et noir, dondo, tan, fan-tan, percentage, stud horse poker, craps, seven and a half, twenty-one, or any banking or percentage game, or any game commonly known as a sure thing game, for money, checks, credits, or any representative of value, or for any property or thing whatever, any peeposcope or nickel-in-the-slot machine, exposing to view

lewd, indecent or obscene pictures, is punishable by a fine of not less than five hundred dollars nor more than one thousand dollars, and every person convicted of a violation of this section must be imprisoned until such fine and costs are paid.

"Sec. 2. Every person who carries on, opens or causes to be opened or who conducts or causes to be conducted, any game of faro, roulette, draw poker, stud horse poker, or what is commonly called round-the-table poker, or solo, or any game of chance played with cards, dice or any device whatever, or who runs or conducts any nickel-in-the-slot machine or other similar machine or permits the same to be run or conducted, other than the games commonly known as sure-thing games, for money, checks, credits, or any representative of value, or for any property or thing whatever, and any person owning or in charge of any saloon, beer hall, bar room, cigar store or other place of business or any place where drinks are sold or served, who permits any of the games mentioned in this section to be played in or about such saloon, beer hall, bar room, cigar store or other place of business, or place where drinks are sold or served, is punishable by a fine of not less than $100.00 nor more than $1,000.00; and every person convicted of a violation of Section 2 of this Act must be imprisoned until such fine and costs are paid."

From an inspection of these provisions it is apparent that the purpose of the legislature in enacting the first section was to prohibit entirely the games of chance enumerated therein, as well as all similar ones, and to declare guilty of a misdemeanor all persons engaging in them, including the proprietors as well as those playing on the outside. All of these games, besides involving the vice of gambling, also afford to the proprietor or dealer an undue advantage over one playing on the outside, enabling him, at will, by fraudulent dealing or the use of unfair devices, to fleece the unwary. No fault is found with this section, except that it is suggested that the mention of peeposcopes or nickel in the slot machines exposing to view lewd pictures, etc., extends it to a subject not mentioned in the

title, and that it is therefore void to the extent of the provision on this subject. Upon this point we express no opinion, as no question concerning it arises here.

Counsel calls attention to the fact that this section denounces as misdemeanants both the proprietor of the games and those who play at them as patrons, and says that in this respect it makes no discrimination as between persons who engage in the prohibited games, whereas the second section punishes the proprietor only, and grants immunity to the patrons; thus making an unjust discrimination between persons who are under like circumstances with reference to the subject of the legislation. In other words, the argument is that, because the second section does not make special mention of the patrons of the games enumerated therein, it affords them immunity, and therefore in this respect contravenes constitutional provisions prohibiting special legislation. There is, perhaps, ground for argument that, though the section does not in terms include the patrons, they might still be held guilty of aiding in the commission of the act declared a misdemeanor, and punished under Sections 19 and 1225 of the Penal Code. These latter provide for the conviction and punishment of misdemeanants, and their aiders and abettors, in cases to which no special provision of law is applicable. But disregarding this suggestion, and reserving any opinion thereon, we do not think the objection to the second section on the ground urged is maintainable. Conceding that the patrons of the games enumerated in this section enjoy immunity, the provision is not obnoxious to any provision of our constitution.

The intention of the legislature, as expressed in this section, was clearly to prohibit proprietory games; that is, to prohibit the opening and running of gambling houses, as well as proprietory games in beer halls, bar rooms, cigar stores, or other places of business, or places where drinks are served or sold, for the purpose of gain, either by means of the games themselves or from *extra* custom attracted by them. The design was to prohibit the *resorts* to which those individuals minded to

engage in gaming are attracted by means of the associations and facilities afforded. It makes no exception of the class of persons who fall within the scope of its operation, but applies to all who are brought within the relations and circumstances provided for by it. Such statutory enactments are not special, within the meaning of the clause of the constitution prohibiting special legislation. (*State ex rel. Lloyd* v. *Rotwitt,* 15 Mont. 38, 37 Pac. 845.) Very many laws do not operate alike upon all citizens of the state. They are nevertheless general in their application, because they include all citizens who are in a like situation. For example, the Penal Code (Section 749) denounces as a felony the engaging in, promoting, encouraging, or instigating a prize fight. It also provides (Section 750) that one who is willfully present as a spectator at such a fight shall be deemed guilty of a misdemeanor only. The validity of this legislation has never been questioned, yet it clearly discriminates between the classes of citizens connected with the same violation of the law. But he who engages in or promotes the crime actively is properly held to be worthy of a more severe punishment, because he has enticed others to lend their presence and encouragement to his criminal enterprise.

It is the duty of the legislature to recognize the different relations the citizens bear to the subject-matter of the particular legislation, and to shape it so as to make it uniform as to all persons in the same class. Having done this, it is free to make such discrimination as it deems proper between the different classes, so long as it violates no express or necessarily implied constitutional prohibition. In this instance, as in many others which might be cited as examples, it has done this, and no just complaint can be made of its action on the ground that it has discriminated in favor of a particular class of citizens.

2. The prohibition in the statute is against the conducting, directly or indirectly, any of the enumerated games "for money, checks, credits, or any representative of value, or for any property or thing whatever." Counsel invoke the rule of construction that, where general words follow particular ones, they

must be construed as applicable to things of the same class, and contend that inasmuch as the general expression, "any property or thing whatever," follows the particular words, "money, checks, credits," etc., it must be held to include only things *ejusdem generis* with those specifically named. It follows from an application of this rule, they say, that the general expression does not suggest any special legislative intent, and therefore that nickel in the slot machines for the distribution of cigars or other merchandise do not fall within the prohibition. As to the character of the machines, the use of which is prohibited, it is clear from the context that the legislature had in mind those similar to the one shown by the evidence to have been in use by the defendant, the operation of which involves the element of chance. It is not possible that it was purposed to prevent the use of automatic machines to sell gum, salted peanuts, and other such articles, which always deliver the same amount when the specified price is deposited. Assuming, therefore, that the statute has no application to machines of the latter. class, which is the rule of construction applicable to the expression, "any property or thing whatever"? In the connection in which it is found, does it include cigars and other articles of merchandise? We think it does. The rule invoked by counsel is well established. (Sutherland, St. Const. Sec. 268 *et seq.*) It is, however, but a rule of construction to be used as an aid in ascertaining the legislative intent, and not for the purpose of controlling the intention of a statute or of confining its operation to narrower limits than the legislature intended. (*Id.* Sec. 279.) It must be used in connection with other rules of equal importance, such as that the meaning of a statute is to be gathered from the languge employed in it, and that every word of it must be taken in its ordinary signification, unless it was clearly the intention of the legislature, as gathered from the context, to restrict its meaning. (*Id.* Sec. 279; Black, Interp. Law, Sec. 63; *State ex rel. Knight* v. *Cave*, 20 Mont. 468, 52 Pac. 200.) In our opinion, the expression involved here does not call for an application of the rule. It must sig-

nify something beyond the specific articles enumerated, or else it must be rejected entirely, as having no import whatever. The enumeration includes every species of property of the classes to which the particulars belong. "Money" includes all money; "checks" includes all kinds of articles embraced under that designation; "credits" is a term of universal application to obligations due and to become due; and when we consider the expression, "any representative of value," there is nothing left of any of the classes of property enumerated; and unless the words, "any property or thing whatever," were designed to include merchandise, such as cigars and similar articles, then, as we have said, it must be rejected entirely as of no import whatever. This may not be done. (*State ex rel. Knight* v. *Cave, supra.*)

The evidence submitted shows clearly that the defendant was conducting, by the use of his machine, a species of gambling game which it is the intention of the statute to prohibit. Each person who played with it deposited his money in it upon the chance of obtaining more than he had staked, and he was in fact paid more than the amount of his deposit, or nothing, according to the value of the hand of cards automatically dealt to him. That he was paid in merchandise instead of money does not alter the result.

The conviction was proper, and the judgment must be affirmed.

*Affirmed.*