A. H. LANG, et als., In Equity, *vs.* HOWARD P. MERWIN.

Somerset. Opinion February 21, 1905.

*Gambling. Slot Machine. Statutory Nuisance. R. S., c. 22, § 1. R. S., c. 126, § 1. R. S., c. 129, § 20.*

1. To constitute gambling in the statutory sense of the term it is not necessary that both parties should stand to lose as well as to win by the chance invoked. It is enough that one party stands to win only or to lose only.

2. A slot machine, so operated that the operator putting into it a nickel coin receives in any event a cigar of the value of his coin, and also stands to win by chance additional cigars without further payment, is a gambling device.

3. A cigar store where such a machine is set up for the use of customers and is used by them, becomes thereby a statutory nuisance and may be enjoined as such.

In Equity. On appeal by plaintiffs. Sustained.

Petition of twenty legal voters of the town of Skowhegan under R. S. 1883, chapter 17, section 1, as amended by statute of 1891, chapter 98,—now R. S. 1903, chapter 22, section 1,—against the tenant or occupant of a certain room in a certain building, in said town, praying for injunctions, both temporary and perpetual, to restrain the defendant from using or allowing said room to be used as a place of resort for gambling.

The Justice of the first instance found the facts to be as follows:

"The defendant was possessor of a nickel-in-the-slot machine which he operated in his cigar store. The machine, so far as necessary

to describe it, consisted of a cylinder, in five sections, made so as to revolve on a shaft. Upon the outer surfaces of the sections were representations of playing cards. When the sections were at rest five cards would be in sight. By pressing a lever the sections were made to revolve, and the mechanism of the machine was such that the sections revolved at different rates of speed, no two alike. The points at which the sections would severally stop and the combinations of cards which would thereby be left exposed to view was purely a matter of chance. The machine was played by those who resorted to the defendant's store according to the following scheme. The player deposited a "nickel" in the slot of the machine and pressed the lever. The player in any event was entitled to a five cent cigar, and the defendant testified, and I find, that he might select any five cent cigar in the store. If three cards of a kind were exposed after the sections ceased to revolve, the player was entitled to two additional cigars; if a "straight," four additional cigars; if a "flush," six additional cigars; if a "full hand," eight additional cigars; if "four of a kind," ten additional cigars; if a "straight flush," twenty-five additional cigars; if a "royal flush," fifty additional cigars. The player had the right to exchange two five cent cigars for a ten cent cigar. By this arrangement, the player for five cents placed in the machine received the same returns that he would if he had paid five cents on the counter. And he might receive more. If he received more at any play, it follows that the defendant lost on that play, which loss he could only recoup by the profit on the cigars sold thereby when the player won no extra ones. And the defendant expected to make such profit by an increased sale of cigars through the use of the machine. The machine was in operation on this plan three weeks, and the defendant estimated the results as amounting on the average to the sale of six five cent cigars for twenty-five cents."

Upon this finding of facts, the Justice of the first instance dismissed the petition, and thereupon the plaintiffs appealed.

*Butler & Butler,* for plaintiffs.

*Forrest Goodwin,* for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, POWERS, PEABODY, SPEAR, JJ.

EMERY, J. The defendant had in his cigar store a slot machine of the kind, and operated in the manner, described in the finding of facts by the justice of the first instance. It is agreed by the parties that if using the machine in the manner described constituted "gambling" in the statutory sense of the word, then the defendant's cigar store was resorted to for "gambling" within the purview of the statute upon which this petition in equity is based, (R. S., ch. 22, § 1.)

The word "gambling" as a legal term has been variously defined by courts and legal authors. By some of these definitions both parties to the transaction in question must stand to lose by chance as well as to win. Judged by these definitions the transaction in this case does not constitute gambling, since the operator does not stand to lose anything by chance but only to win. By other definitions, however, it is not essential that both parties should stand to lose by chance; it is enough if one party stands to lose, or to win by chance. If such be the statutory meaning of the term then the transaction described does constitute gambling since the operator stands to win something by chance, and the cigar dealer to lose by chance. In view of the conflict of authority the justice of the first instance dismissed the petition, practically pro forma, that the case might have upon appeal an authoritative determination. Our task now is to ascertain in what sense, the narrow or the broad, the word "gambling" was used by the legislature in enacting this statute.

Aid in determining the sense in which the legislature used a given term in one chapter or section of its statutes may often be obtained by considering the language of other chapters and sections upon the same or kindred subjects. Referring to the Chapter entitled "Gambling," (R. S., 126, § 1), we find that every person is forbidden to "permit any person to gamble *in any way* in any house, shop or place under his care or control." Referring to the Chapter entitled "Offenses against the public health, safety and policy," (R. S., ch. 129), we find in § 20 that "every lottery, policy, policy lottery, policy

shop, *scheme or device of chance of whatever name or description,*
whether at fairs or public gatherings or elsewhere, and whether in
the interests of churches, benevolent objects or otherwise is pro-
hibited." It would seem from these to have been the intention of
the legislature to prohibit every pecuniary transaction in which pure
chance has any place. There are no words of limitation or excep-
tion. To give effect to this intention it would seem necessary to hold
that the legislature has used the term "gambling" in its broadest,
most generic sense, as comprehending every species of game or device
of chance.

In the case before us it is idle to assume, or concede, that the
person putting his five cents into the machine may be doing so
merely as a means or mode of buying a five cent cigar. It is idle
to deny that the impelling motive is the hope of getting other cigars
for nothing. If the machine did not afford that chance it would not
be used. True, the cigar dealer sets up the machine to increase his
trade and is recouped by that increase for any losses, so that in the
end he loses nothing, but he does so by arousing and stimulating the
gambling propensity, the very propensity the legislature evidently
seeks to repress. The element of chance is the soul of the tran-
saction. The operator hopes by chance to get something for nothing.
The dealer hopes chance will save him from giving something for
nothing. Each is pecuniarily interested adverse to the other in a
result to be determined solely by chance. To use the language of
the street "it is a gamble" which will win, and we have no doubt
the transaction is "gambling" in the statutory sense of the word.

If authority for this conclusion is needed, it is not wanting. In
*State* v. *Willis*, 78 Maine, 70, in speaking of an advertisement alleged
to be of a lottery, this court said: "However disguised by indirect
or deceptive expression, the paper as a whole discloses a lottery.
If it were not so readers would not become buyers." So in the case
at bar, however disguised the scheme or device, its essential element is
that of affording a chance to get something for nothing. If it were
not so visitors to the store would not use it. A like case in prin-
ciple is *Horner* v. *United States*, 147 U. S. 449. The Austrian
government issued bonds and to induce purchase of them by the

public it obligated itself to pay not only the principal and interest of each bond but also such additional sum, if any, as the number of the bond might draw in a lottery established for that purpose. The fact that the purchaser of the bond presumably got full value for his money in the bond itself and did not stand to lose anything by chance, was held by the court not to save the transaction from being a lottery. The element of lot or chance was in it and that was enough. The two cases seem alike in principle. The opinion of the court is elaborate and exhaustive, citing many cases. We deem a reference to that opinion and the cases cited therein all that is necessary by way of citation.

*Decree below reversed. Petition sustained with*
*costs. Injunction granted.*