# FERGUSON v. STATE OF INDIANA.

[No. 22,153. Filed November 26, 1912.]

1. GAMING. — "Gambling Device". — Slot Machine. — A machine operated by depositing a nickle in a slot and then turning a crank, whereupon it automatically pays a reward consisting of a package of chewing gum and sometimes, in addition thereto, one or more checks that can be used in the slot instead of nickles, is a gambling device within the meaning of §2474 Burns 1908, Acts 1905 p. 584, §565, prohibiting the keeping of any device for the purpose of betting or gaming, although indicators are attached which inform the player as to the reward to be received before each play. p. 569.

From Criminal Court of Marion County (40,301); *Joseph T. Markey*, Judge.

Prosecution by the State of Indiana against Charles Ferguson. From a judgment of conviction, the defendant appeals. *Affirmed*.

*Daniel Brown, Jr., Henry Seyfried, Groninger & Groninger*, for appellant.

*Thomas M. Honan*, Attorney-General, *Thomas H. Branaman, Edwin Corr* and *James E. McCullough*, for the State.

MORRIS, J.—Appellant was convicted of keeping a gaming device in violation of §2474 Burns 1908, Acts 1905 p. 584, §565. From a judgment imposing a fine of $25 this appeal is prosecuted. The only error assigned is the action of the

lower court in overruling appellant's motion for a new trial; and the only question raised under that assignment relates to the sufficiency of the evidence to sustain the finding. Appellant's contention is that the evidence does not show that the device complained of was a gaming one. The

1. evidence shows that the machine was operated by the player depositing a nickel in a slot and then turning a crank, whereupon the machine would automatically pay the reward. The machine would always pay to the player a package of chewing gum of the retail value of five cents, and sometimes, in addition thereto, would pay one or more checks. These checks could be used in playing the machine in the same manner as nickels were used. By means of indicators the player was informed as to what the reward would be before each play, but there was no method of knowing what would be the reward of subsequent plays. Thus, if before being played the machine indicated that a package of gum would be the reward, after being played, it might indicate that on the next play a package of gum and one or more checks would be the reward.

In *Lang* v. *Merwin* (1905), 99 Me. 486, 59 Atl. 1021, 105 Am. St. 293, a device similar to the one here was under consideration, except that it did not indicate the reward before the deposit of the coin. In the course of its opinion, the court said: "In the case before us it is idle to assume, or concede that the person putting his five cents into the machine may be doing so merely as a means or mode of buying a five cent cigar. It is idle to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance it would not be used. True, the cigar dealer sets up the machine to increase his trade and is recouped by that increase for any losses, so that in the end he loses nothing, but he does so by arousing and stimulating the gambling propensity, the very propensity the legislature evidently seeks to repress. The element of chance is the soul of the transaction. The operator hopes

by chance to get something for nothing. The dealer hopes chance will save him from giving something for nothing. Each is pecuniarily interested adverse to the other as a result to be determined by chance. * * * We have no doubt the transaction is 'gambling' in the statutory sense of the word. * * * However disguised the scheme or device, its essential element is that of affording a chance to get something for nothing. If it were not so visitors to the store would not use it.''

In the case of *In re Cullinan* (1906), 99 N. Y. Supp. 1097, 114 App. Div. 654, the court said: ''The chief element of gambling is the chance or uncertainty of the hazard. The chance may be in winning at all, or in the amount to be won or lost. In using the present machine we may assume that the player cannot lose. By far the greater majority of the checks called in trade for the precise sum deposited in the slot. If every ticket represented five cents, the machine would not be patronized. The bait or inducement is that the player may get one of the checks for a sum in excess of the nickel he ventures, and that is the vice of the scheme. If he wins more than he pays, the proprietor must lose on that discharge of the ticket. To constitute gambling it is not important who may be the loser. * * * The inventor of the present machine has attempted to obviate the criticism to which other slot machines have been subjected by cunningly returning to the player operating the machine a check or ticket which secures to him in cigars or liquor the amount of his stake. Like most endeavors to adhere to the letter of the law while violating its spirit, he cannot succeed. The present device attractively ministers to the gambling humor the same as other slot machines of substantially similar design. Unless it did this, it would not entice the customer. If in every instance it actually returned five cents in coin to the player, no one would pretend that the device would attract any one. So if on every cast a ticket was run out calling for five cents in trade, no person would

take the trouble to drop a nickel in the slot. It is the hazard—the chance of winning more than the sum ventured —which draws people to the machine, and that element was the conspicuous one retained in its mechanism, and it is that which brings it within the condemnation of the statute.''

The above opinions are in accordance with the weight of authority on the question as to what constitutes a gaming device, and rest on sound reasoning. In the present case, the fact that the machine would indicate the reward before it was played, makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the vice at which §2474, *supra,* is directed. The inventor of the machine has endeavored ''to adhere to the letter of the law while violating its spirit,'' and—as always must be the result—has failed.

The evidence shows that the machine was a gaming device within the intent of the legislature as expressed in §2474, *supra. Lang* v. *Merwin, supra; In re Cullinan, supra; Meyer* v. *State* (1900), 112 Ga. 20, 37 S. E. 96, 51 L. R. A. 496, 81 Am. St. 17; *Lytle* v. *State* (1907), 100 S. W. (Tex. Crim.) 1160; *Horner* v. *United States* (1893), 147 U. S. 449, 37 L. Ed. 237, 15 Sup. Ct. 409; *State* v. *Woodman* (1902), 26 Mont. 348, 67 Pac. 1118; *Territory* v. *Jones* (1908), 14 N. M. 579, 99 Pac. 338, 20 L. R. A. (N. S.) 239, and case noted, 20 Ann. Cas. 128; *Fielding* v. *Turner* (1903), 1 K. B. 867.

Judgment affirmed.

NOTE.—Reported in 99 N. E. 806. See, also, 20 Cyc. 881. As to gambling devices and games, see 121 Am. St. 693. As to the application of a statute against gaming or gambling to a slot machine, see 20 Ann. Cas. 131. The authorities on the question whether operating a slot machine is gambling are reviewed in a note to the above case as reported in 42 L. R. A. (N. S.) 720.