## STATE v. G. A. JOHNSON.

No. A-2849.   Opinion Filed February 1, 1919.

(177 Pac. 926.)

GAMING—Offenses—Slot Machine.   A slot machine which delivers an article the sale price of which is the coin deposited in the machine, and in addition thereto sometimes delivers certain trade checks ranging in quantity and value from two to 20 times the value of the coin deposited, and also indicates before each play what the machine will deliver on that particular play, but does not indicate what will be delivered on any subsequent play, is prohibited from being set up and operated in a place of business under sections 4 each of chapter 128, Sess. Laws 1913, and chapter 26, Sess. Laws 1916.

*Appeal from County Court, Coal County;*
*C. M. Threadgill, Judge.*

G. A. Johnson was acquitted in the county court of Coal county of the offense of setting up and operating a slot machine in violation of law, and the State appeals on a reserved question of law.   Question decided in favor of the State.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty Gen., and *G. T. Ralls,* Co. Atty., for the State.

MATSON, J.   This is an appeal taken by the state of Oklahoma from the county court of Coal county upon a question of law reserved by the state for decision by this court in the trial of one G. A. Johnson, who was charged by information as follows:

"That said G. A. Johnson did willfully, knowingly, and unlawfully set up and operate in his place of business on the Main street and at the corner of Main street and Ohio avenue, Coalgate, Oklahoma, a slot machine for the purpose of having the same and allowing the same to be played by others for money, property, checks, credits, and representatives of value contrary to the form of the

statutes in such cases made and provided, and against the peace and dignity of the state."

At the conclusion of the state's evidence, the court gave the jury a peremptory instruction to acquit the defendant, because the evidence was insufficient to sustain a conviction. To this action of the court the state reserved an exception, and here contends that the trial court erred in instructing the jury to acquit the defendant; the state contending that the crime charged in the information was clearly made out by the state's evidence.

The statute upon which this information is based reads as follows:

"Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted in or about his place of business, whether as owner, employee or agent, any slot machine for the purpose of having or allowing the same to be played by others for money, property, checks, credits, or any representative of value shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars; or by imprisonment in the county jail for a term of not more than thirty days, or by both such fine and imprisonment." (Section 4, c. 128, Sess. Laws 1913; section 4, c. 26, Sess. Laws 1916.)

The evidence on the part of the state to support the charge was brief, four or five witnesses being introduced, whose testimony was in effect the same as that of the witness Albert Collier, which is as follows:

"Q. Your name is Albert Collier? A. Yes, sir.

"Q. You live in Coalgate, Okla.? A. Yes, sir.

"Q. How long have you lived here? A. Three years.

"Q. What is your occupation? A. Carpenter.

"Q. Do you know the defendant, G. A. Johnson?   A. Yes, sir.

"Q. How long have you known him?   A. About three years.

"Q. Do you know where he had a place of business in a little house on wheels down in front of the barber shop? A. Yes, sir

"Q. Were you ever in that little house?   A. Yes, sir.

"Q. When was that?   A. I was in there often.

"Q. Along about February, this year?   A. Yes, sir.

"Q. Will ask you what he had in that little building? A. Cigars, tobacco, chewing gum, cold drinks, slot machine.

"Q. Did you play on the slot machine?   A. Yes, sir.

"Q. What did you play the machine with?   A. Nickels.

"Q. What would you get?   A. Chewing gum and trade checks.

"Q. What was the most you could get for a nickel? A. Chewing gum.

"Q. When you played, what did you get?   A. Checks sometimes, and chewing gum every time.

"Q. Did you play any checks?   A. Yes, sir.

"Q. Where did you get those checks?   A. Out of the machine.

"Q. What would you play to get checks?   A. Nickels.

"Q. How many would you play to get checks?   A. from two to 20.

"Q. How many did you get at a time?   A. Don't think I ever got more than four.

"Q. Would you always get checks?   A. No, sir.

"Q. The checks you got playing, what did you do with them? A. Put them back in the machine, and sometimes you would trade them.

"Q. What would you buy? A. Tobacco and cigarettes.

"Q. That was here in Coalgate, Okla.? A. Yes, sir.

"Q. And the defendant, Arthur Johnson, had charge? A. Yes, sir.

"Q. He was there when you were playing? A. Yes, sir.

"Q. Did you see any one else playing there that day? A. I couldn't say.

"Q. He was running openly? A. Yes, sir.

"Cross-examination by Mr. Trice:

"Q. What date was that? A. I couldn't say.

"Q. You couldn't say it was February, March, or April? A. Along in the winter some time.

"Q. When you put nickels in the machine, you could tell what you were going to get before? A. Yes, sir.

"Q. Would you always get a package of chewing gum? A. Yes, sir.

"Q. Could you tell the brand? A. No, sir.

"Q. Was it Spearmint? A. I believe it was.

"Q. When you put nickels in the slot machine, you would get a package of chewing gum? A. Yes, sir.

"Q. Could you tell how many trade checks you were going to get? A. Yes, sir.

"Q. Sometimes you wouldn't get any trade checks? A. No. sir

"Q. That was the only kind of machine you saw in there? A. Yes, sir; in operation.

"Redirect by Judge Ralls:

"Q. What you played and wouldn't get checks, what was your object in playing? A. Chewing gum. .

"Q. When you got checks, you wouldn't get chewing gum? A. No, sir; I could tell whether I was going to get checks, and I could tell every time what I was going to get.

"Q. Then what was your object in playing? (Objected to by the defendant. Objection sustained.)

"Q. When the indicator would indicate that you would not get any checks by playing, what was your object in playing at that time? A. Well, my object in playing was to get the indicator in shape so that I could get some.

"Q. Now, if the indicator showed you were not going to get checks, would you keep up playing? A. That was my idea; I could play until I went broke.

"Q. Were you playing the machine for—when the machine showed you were not going to get checks the next turn, why would you continue playing? (Defendant objects as incompetent, irrelevant, and immaterial. Objection sustained.)"

The state's evidence in effect established that the defendant set up in his place of business and conducted a certain slot machine, which was played by certain of his customers by placing nickels in a slot which had the effect of operating the machine, and at each operation the person playing the same would get a package of chewing gum, and at some times, in addition to the chewing gum, the operator would get from two to 20 trade checks of the value of 5 cents each in trade at that place. These trade checks could be used either in purchasing cigars, tobacco, cigarettes, cold drinks, or chewing gum which the defendant kept at his place for sale, or else they could be played back into the machine; the testimony being that the trade checks would operate the machine as well as nickels.

The question here presented is:

"Is a slot machine wherein the operator or person playing same receives, at each play or operation, the equivalent of the amount invested in property (chewing gum), but at some operation in addition thereto receives certain trade checks ranging in value according to the number received by the play from 10 cents to one dollar, prohibited from being conducted under the terms of the foregoing statute; the evidence also showing in this connection that before the play is started the operator can tell from the machine's index exactly whether he will receive only chewing gum or also trade checks in addition thereto on the play, but not what the index may show for any subsequent play?"

The trial court held that such a state of facts was insufficient to sustain a conviction under the statute, instructing the jury to return a verdict of not guilty against the defendant, which was done, and the defendant discharged.

By enacting the statute against slot machines, the Legislature intended to prohibit the setting up, operating, or conducting of any kind of a slot machine for the purpose of having or allowing same to be played by others for money, property, checks, credits, or any other representative of value. It was intended to prohibit the placing of such a machine in any place of business as an invitation to the public to play same for money or other property; to invite the public generally to take a chance of getting something for nothing.

The reason of the trial court for holding the evidence in this case insufficient does not appear from the record. The court sustained the motion to direct a verdict of not guilty, merely commenting that it was the opinion of the court that "the testimony is insufficient to make out an offense against the defendant under the law." It is evident to this court that, in directing a verdict of not guilty in

this case under the facts proven by the state, the trial court erred.

In the case of *Ferguson v. State,* 178 Ind. 568, 99 N. E. 806, 42 L. R. A. (N. S.) 720, Ann. Cas. 1915C, 172, the Supreme Court of Indiana held:

" A slot machine which delivers an article worth the coin deposited, and sometimes tickets for additional chances in addition thereto, and indicates before each transaction what will be delivered, does not prevent its being within the operation of the statute prohibiting gaming devices."

The Indiana statute above construed is not as specific as the statute of this state prohibiting the operation of slot machines for money or other representatives of value. In the Ferguson Case, the argument was advanced that there was no element of chance in the operation of the machine, that the player always got the value of his money and knew before each play exactly what he was going to get; but in reply to such argument the court said:

"In the present case, the fact that the machine would indicate the reward before it was played makes no difference. The inducement for each play was the chance that by that play the machine would be set to indicate that it would pay checks on the following play. The thing that attracted the player was the chance that ultimately he would receive something for nothing. The machine appealed to the player's propensity to gamble, and that is the device at which section 2474 is directed. The inventor of the machine has endeavored 'to adhere to the letter of the law while violating its spirit,' and, as always must be the result, has failed. The evidence shows that the machine was a gaming device within the intent of the Legislature as expressed in section 2474, *supra. Lang v. Merwin, supra* [99 Me. 486, 59 Atl. 1021, 105 Am. St. Rep. 293]; *Re Cullinan, supra* [114 App. Div. 654, 99 N. Y. Supp. 1097]; *Meyer v. State,* 112 Ga. 20, 51 L. R. A. 496,

81 Am. St. Rep. 17, 37 S. E. 96; *Lytle v. State* (Tex. Cr. App.) 100 S. W. 1160; *Horner v. United States,* 147 U. S. 449, 37 L. Ed. 237, 13 Sup. Ct. 409; *State v. Woodman,* 26 Mont. 348, 67 Pac. 1118; *Territory v. Jones,* 14 N. M. 579, 99 Pac. 338, 20 L. R. A. (N. S.) 239, and case note, 20 Ann. Cas. 128; *Fielding v. Turner* [1903] 1, K. B. 867, 72 L. J. K. B. N. S. 542, 67 J. P. 252, 51 Week. Rep. 543, 89 L. T. N. S. 273, 19 Times L. R. 404, 20 Cox, C. C. 531."

Also in the case of *State v. McTeer,* 129 Tenn. 535, 167 S. W. 121, it was held that a slot machine operated like the one involved in this case was a gambling device within the meaning of the Tennessee statute. In the body of the opinion, it is said:

"The question raised is whether the slot machine described is a gambling device. We are of the opinion that it is. It is insisted by the defendant that this is not a sound conclusion, because the indicator always shows what the player is to get before he deposits his nickel; hence it is said there is no element of uncertainty, and no opportunity of obtaining disproportionate gains, or sustaining loss, by the hazard of anything of value. It is true there is no hazard of loss, if we assume, as we think we should, that each package of gum is the fair commercial equivalent of five cents; but there is the prospect of obtaining very greatly disproportionate gains. The indicator may show a package of gum when the player deposits his nickel, and this he will get when he works the lever; but at the same time the indicator may present for the next play either one of the numbers 2, 4, 6, 8, 10, 12, 14, 16, 18, or 20, representing checks of the value of 5 cents each. If, for example, the number shown is 20, the player, by depositing 5 cents, will obtain 20 checks, worth $1. So for the other numbers. The lure is the opportunity of winning from 10 to 100 cents by the deposit and expenditure of 5 cents. There must be at least one play before any one of the numbers mentioned is shown on the indicator, and there may be many, and it is not known which number will appear, nor at what time, nor after how many plays. In

case the checks are shown on the indicator, the owner of the machine stands to lose on that play the difference between 5 cents and the denomination of the check which the machine may show; that is, the loss of from 5 cents to 95 cents. We may assume that the dealer makes some profits on each package of gum and that the profits thereon, and the profits on the goods to be sold in exchange for the checks, will show an ultimate profit for him on all the contents of the machine, and this whether the contents be exhausted by one player or by many successive players. So there will be no ultimate loss to him. However, there is always the chance that any single player, by the expenditure of 10 cents, though making two plays of 5 cents each, may obtain, not only a package of gum worth 5 cents, but checks worth from 10 cents to 100 cents, and so in proportion for many plays, and a corresponding loss to the owner of the machine on such individual deals. The player is induced to continue by the fact that he is getting 5 cents' worth of gum for each play, with always the chance just ahead that the next presentation of the indicator will give him the opportunity of making a profit of from 100 to many times that per cent. We think this shows the machine is a gambling device. It is not essential that there should be the chance of loss to the players, as well as of extraordinary or greatly disproportionate gain. *Bell v. State,* 5 Sneed [Tenn.] 507; *Eubanks v. State,* 3 Heisk. [Tenn.] 488."

In the case of *State v. Googin,* 117 Me. 102, 102 Atl. 970, the Supreme Court of Maine held a slot machine identical with the one operated by this defendant a device of chance within the meaning of the statute of that state against the operation of such devices. In the body of the opinion, it is said:

"But respondent says the gum machine involves no element of chance; that each play of the machine is a complete transaction, and shows precisely what the player is to receive, and what the machine is to give; that there is no contract, express or implied, that the player shall have

a second or third play to avail himself of the opportunity of obtaining the trade checks; that, this being so, there is no element of chance. But the fallacy of this contention is found in the assumption that the machine deals with the individual, whereas by its method of operation, of necessity, it deals with the public. It is an automatic device, the operation of which is planned in every detail before it is put to use. It is then placed in public places, to be automatically worked. It is the dumb agent of its owner, inviting the public to operate it as often and as many times as any one of the public may please. We find no limitation upon the right of the same person to operate over and over again. It is undoubtedly this unlimited right that allures the patronage that makes the operation of the machine profitable. If the player does not win the first time, he knows he can repeat till he does win. It is therefore quite apparent that it is the prize, and not the gum, that invites the public. Accordingly, while each play is a completed act, it may be only preliminary to the future play, by the same person, which will bring forth the coveted prize; the chance in this operation being, not in the visible play, which may show only a package of gum, but in the invisible play by which the machine may turn up a visible prize to be captured on the next play. If a play turns up no premiums, neither party loses. If it does turn up a premium, then the machine loses on that particular play.

"But it is said there is no loss to the machine in the end, and consequently no chance, because the machine has calculated the profits and losses beforehand, and set apart a certain part of the profits to be allowed its customers. True, but not to all customers alike. Some get something; some get nothing; some more; some less. In this lies the test of what this device means, and the theory upon which it is conceived and worked, namely, to induce customers to play the machine with the expectation of getting something for nothing—it matters not what customer is successful—in that it is perfectly obvious that one part of the public pays in money for what another part of the public

gets in prizes. In other words, this machine is a device designed to play one part of the public against another part of the public, for the purpose of inducing the whole public to take the chance of gain, which in the end results in producing to its owner the predetermined profits."

See, also, *Allen v. Commonwealth,* 178 Ky. 250, 198 S. W. 896.

The foregoing well-reasoned authorities support the conclusion that the evidence introduced on behalf of the state was sufficient to authorize the jury to convict the defendant of having set up, operated, and conducted in his place of business a slot machine which was played by others in violation of the foregoing statute. It was error, therefore, for the trial court to direct the jury to acquit the defendant, and the question of law reserved by the state, as to the sufficiency of the evidence in this case to support a conviction for the crime of unlawfully setting up and operating a slot machine, is decided in the state's favor.

The trial court's error of law in directing the jury to return a verdict of not guilty against the defendant having operated in his acquittal and discharge, this court is powerless to remand the cause for any further proceeding. We may only decide the question of law involved for the future guidance of trial courts in similar cases.

DOYLE, P. J., and ARMSTRONG, J., concur.