## C. J. NELSON v. STATE.

No. A-5839.   Opinion Filed June 18, 1927.
(256 Pac. 939.)

Ben F. Williams and Merle G. Smith, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the county court of Logan county on a charge of operating a slot machine, and was sentenced to pay a fine of $25.

The information charges a violation of the provisions of section 1931, Comp. Stat. 1921, which is as follows:

"Any person who sets up, operates or conducts, or who permits to be set up, operated or conducted in or about his place of business, whether as owner, employee or agent, any slot machine for the purpose of having or allowing the same to be played by others for money, property, checks, credits, or any representative of value shall be deemed guilty of a misdemeanor and upon conviction shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars; or by imprisonment in the county jail for a term of not more than thirty days, or by both such fine and imprisonment."

A jury was waived, and the case was tried to the court. The facts are not controverted. The evidence

discloses that at the time charged, the defendant had in operation in his place of business a certain Caille Bros. slot machine containing mints in packages. Any person might place a nickel in a slot of this machine, work a lever, and he would receive for the coin played one package of mints, and would in some instances, in addition to the package of mints, receive trade checks, each of the value of 5 cents in merchandise. These checks could be played in the machine for other checks. It was, however, against the rule of defendant for these checks to be played in the machine. Excerpts from the testimony disclosing the manner in which the machine operated follow. Ora F. Miller testified in part:

"* * * Q. Did you operate the machine that day? A. Yes, sir. Q. How did you operate it? A. I put in a nickel, pulled a lever, and I got a package of mints and four chips. Q. You received the mints? A. Yes, sir. Q. What was the value of these mints? A. Five cents. Q. And you received four chips? A. Yes, sir. Q. What was the value of the chips? A. Five cents, in mints. * * * Q. Now, Mr. Miller, what could you get for a nickel in that machine? A. Mints. Q. What did you get? A. A package of mints and four chips. Q. Then you could get more than a package of mints? A. Yes, sir. Q. You could get eight chips and a package of mints? A. I don't know. I got four chips. Q. And what did you do to get those checks? A. They dropped from a little slot in the machine. Q. With a nickel's worth of mints? A. No; the mints came out of one slot and the chips at another. Q. Both at the same play? A. Yes, sir. * * *"

C. R. Mize testified in part:

"* * * Q. Did you see any one operate the machine while you were there? A. Four or five operated it; yes, sir. Q. Did you try to operate it while you were there? A. No, sir. Q. Have you ever had an occasion to examine this machine or any other Caille Bros.

machine? A.. Just this one. Q. Do you know of your own personal knowledge, Mr. Mize, whether or not this machine will pay anything, other than mints? A. Yes, sir; it will pay checks. Q. How many will it pay at one time? A. I do not know the exact amount, but I have seen it pay as many as eight. Q. Do you know the value of these coupons? A. Five cents in trade. Q. Each you mean? A. Yes, sir. Q. Do you know whether or not you could place a coupon that belonged to the machine back in it and get anything? A. Nothing only more coupons. Q. Then, as I understand you, a coupon played back into the machine will not deliver a package of mints? A. No, sir. Q. But it will deliver more coupons? A. Yes, sir. * * *"

The contention is made that the statute is unconstitutional and void; that neither the public health, welfare, nor good morals bring it within the proper scope of the police power; that the statute does not prohibit the use of a slot machine as a gambling device where the operator incurs some hazard or stands to win or lose by chance, but is general in its terms, and is directed against any slot or vending machine. And, since under its terms it is made unlawful to set up any slot machine where the deposit of a coin will procure any article of merchandise such as mints, gum, matches, drinking cups, postage stamps, or any other merchandise,. the statute cannot be upheld.

We deem it unnecessary to enter into an extended discussion of the rules of statutory construction by which the constitutionality of a statute is to be determined. As we view it, the failure of the Legislature to define a slot machine as the term is used in this statute is not fatal. The use of the word "played" as employed in this statute is significant. It has a meaning akin to gaming or wagering. Thrower v. State, 117 Ga. 753, 45 S. E. 126. It is evident that a mere vending machine, by which merchandise is dispensed in a uniform quantity to each purchaser, al-

though the price may be deposited in a slot in such machine, is not what is meant. The use of a vending machine is not unlawful. Such a machine cannot be played for money, property, checks, credits, or any representative of value as the terms are used in this statute. Under the record in this case, however, this machine did not dispense uniformly to each purchaser a package of merchandise, but in addition, would at times deliver checks capable of being played in the machine for other checks or redeemable by the operator of the machine for merchandise. The delivery of these checks not being uniform constitutes a chance or hazard under which the person playing the machine might receive value greatly in excess of the coin deposited. This makes the machine a gambling device. The fact that the indicator on the machine would show before the player deposits his coin what it would pay does not prevent it from being a gambling device. It may be assumed that the package of mints which the machine delivered at each play is a fair commercial equivalent for the coin deposited, but the fact that, by playing the machine, there is a chance that the indicator will disclose for the next play that the player will receive, in addition to the mints, checks of considerable value in addition thereto, appeals to the gambling instinct, and the player is induced to continue by the fact that he is receiving on each play a fair equivalent to the money expended and has also the chance of winning checks greatly disproportionate to the value of the coin played. In order to gamble, it is not necessary that the player shall hazard what he plays. It is equally gambling if he may win by chance more than the value expended by him. State v. Smith, 2 Yerg. (10 Tenn.) 272, 281; State v. Mc-Teer, 129 Tenn. 535, 167 S. W. 121.

This court, in the case of State v. Johnson, 15

Okla. Cr. 460, 177 P. 926, had occasion to consider this statute and upheld the same, citing the pertinent and enlightening cases of: Ferguson v. State, 178 Ind. 568, 99 N. E. 806, 42 L. R. A. (N. S.) 720, Ann. Cas. 1915C, 172; State v. McTeer, 129 Tenn. 535, 167 S. W. 121; State v. Googin, 117 Me. 102, 102 A. 970; Allen v. Commonwealth, 178 Ky. 250, 198 S. W. 896.

These cases and the further authorities therein cited fully sustain the rule here announced.

The case is affirmed.

DOYLE, P. J., concurs.

DAVENPORT, J., absent, not participating.