CHARLES A. COUCH v. STATE.

No. A-9702.   Feb. 12, 1941.
(110 P. 2d 613.)

224

Glen O. Morris, Jack Tellegen, and Charles W. Moss, all of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., for defendant in error.

JONES, J. The defendant was charged in the common pleas court of Oklahoma county with the offense of operating a slot machine, jury was waived, the defendant was tried, convicted, and sentenced to pay a fine of $50 and costs, and has appealed to this court.

The information, omitting the formal parts, filed against the defendant is as follows:

"On the 20th day of June, A. D. 1939, in Oklahoma County, State of Oklahoma, Charles A. Couch whose more full and correct name is to your informant unknown, then and there being did then and there willfully, unlawfully and wrongfully commit the crime of operating a slot machine in the manner and form as follows, to wit:

"That is to say, the said defendant in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there willfully, unlawfully, and wrongfully set up, operate, conduct and permit to be set up, operated and conducted in and about his place of business, to wit:

"John Brown's Cafe at 909 North Eastern in Oklahoma City, said county and state, he the said defendant then and there being the operator of said John Brown's Cafe, a certain slot machine, to wit:

"A Five Ball Marble Board Slot Machine No. 4742 for the purpose of having and allowing the same to be played by others for money, property, tangible or intangible, coin, currency, checks, chips, tokens, credit, amusement and representatives of value, or thing of value, contrary to the form of the statutes in such case made and provided against the peace and dignity of the State of Oklahoma."

The evidence introduced by both the state and the defendant was uncontradicted, and in brief was as follows: The defendant was, and had been for sometime prior to June 20, 1939, the owner and operator of a cafe in Oklahoma City; that at the time involved, and for some period prior thereto, the defendant owned a five ball marble board machine, which was located in his said cafe. That on the date in question one H. E. Shepherd came into the cafe while two officers were there and inquired of the defendant as to whether he could receive anything for playing the marble machine, to which the defendant replied that the machine was for amusement only, and that no tokens, merchandise, or anything else would be paid by the defendant to induce the playing of said machine; that the said Shepherd did at that time place a nickel in the slot of said machine and did operate and play said machine by shooting five steel balls.

A picture of the machine was identified and attached to the case-made as an exhibit. The officers testified that the machine was operated on the same principle as any other marble board which they had seen. That it was equipped to operate electrically; and that when the steel balls, which were shot with a plunger, came in contact with certain spools, an electrical flash resulted, and a corresponding rabbit or duck at the back board would fall. In order to operate the machine, you place a nickel in the slot, push a plunger, and five steel balls come up in a chute on the side of the board. There was a pin on the machine which, if struck, would give a free game or one ball, but the mechanism to that pin was not connected; that when the steel ball is shot, it may bounce off on one pin and hit another or run down the board without hitting anything. That the number of ducks or rabbits which are knocked down depends some upon skill, but mostly upon chance.

The statute under which this action was commenced is House Bill No. 125, chap. 15, art. 3, p. 8, Session Laws of Oklahoma, 1939, 21 Okla. St. Ann. § 964 et seq., enacted by the Seventeenth Legislature. This statute was before this court for consideration, and was discussed at length and thoroughly analyzed in an opinion by Judge Doyle in the case of Ex parte Davis, 66 Okla. Cr. 271, 91 P. 2d 799.

Said act provides:

"Section 1. That, for the purpose of this Act, 'slot machine' is defined to be:

"First: Any machine, instrument, mechanism or device that operates or may be operated or played mechanically, electrically, automatically or manually, and which can be played or operated by any person by inserting in any manner into said machine, instrument, mechanism or device, a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play

or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value; and

"Second: Any machine, instrument, mechanism or device that operates or may be played or operated mechanically, electrically, automatically, or manually, and which can be played or operated by any person by paying to or depositing with any person, or by depositing with or in any cache, receptacle, slot, or place a coin, chip, token, check, credit, money, representative of value, or a thing of value, and by which play or operation such person will stand to win or lose, whether by skill or chance, or by both, a thing of value.

"Section 2. That for the purposes of this Act, 'a thing of value' is defined to be any money, coin, currency, check, chip, token, credit, property, tangible or intangible, amusement or any representative of value or any other thing, tangible or intangible, calculated or intended to serve as an inducement for anyone to operate or play any slot machine or punch board."

It is the contention of the defendant that the amusement referred to in section 2 of the above act as a thing of value must be given the same construction as the words "money", "coins", "checks", etc., and that where it is shown by the evidence that the player secures the full value of amusement, in unvarying amounts, for the money he has invested in each play, it cannot be said that the "amusement" is a thing of value, won or lost, as defined in section 2 of said act.

The defendant insists that the rule of "ejusdem generis" should apply in the construction of this statute; and several cases are cited in his brief to the effect that the meaning of a word used in a statute must be construed in connection with the words with which it is associated.

In the case of Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289, 299, it is stated:

"This case [Ingram v. State, 51 Okla. Cr. 143, 3 P. 2d 736] and all of the text-books and authorities which announce the doctrine of 'ejusdem generis', recognize it as a rule of construction, and that it should not be allowed to defeat the plain legislative intent. This is recognized in 59 Corpus Juris, sec. 581, cited in defendant's brief, when it says: 'The doctrine of ejusdem generis, however, is only a rule of construction, to be applied as an aid in ascertaining the legislative intent, and cannot control where the plain purpose and intent of the Legislature would thereby be hindered or defeated.' * * *

"A primary rule of construction is that the intention of the Legislature is to be found in the ordinary meaning of the words of a statute in the connection in which they are used and in the light of the mischief to be remedied."

It seems to us that the word "amusement" was inserted in this statute for the specific purpose of preventing the operation of these slot machine games, similar to the one in controversy, regardless of the name by which it may be called. The Legislature evidently thought that the installation and operation of these games would be detrimental to the public morals; and we do not find, under the facts, that this was an unreasonable application of the police power.

The Legislature under the police power has the right to determine what is dangerous and injurious to the public health, the public morals, and the public safety of its inhabitants. McCord v. State, 2 Okla. Cr. 214, 101 P. 280.

However, police power should not be invoked where the subject to which it is directed has no substantial relation to public health, morals, or welfare, or for a matter for which by law no person ought to be punished. Ex parte Davis, supra.

In Ex parte Davis, supra, the defendant was operating a marble board similar to the one in question. No cash,

merchandise, checks, tokens, etc., were given or offered to induce the playing of that machine; but it was for amusement purposes only. The constitutionality of said act was upheld in that opinion. It was therein stated [66 Okla. Cr. 271, 91 P. 2d 807]:

"No ambiguity patent or latent appears to us in this section of the statute. The language is explicit; its meaning unmistakable. * * *

"It is to be observed that under the police power, every state has the right to determine what is dangerous and injurious to the public health, public morals, and the public welfare, of its inhabitants. However, the police power is not to be invoked where the subject to which it is directed has no substantial relation to those objects, or for a matter which by law no person ought to be punished.

"It is generally held that a slot machine, which in return for a coin deposited therein, dispenses merchandise of the value of the coin, accompanied at occasional and uncertain intervals, by a varying amount of money, trade-checks, or coupons, is a gambling instrument. State v. Johnson, 15 Okla. Cr. 460, 177 P. 926; Nelson v. State, 37 Okla. Cr. 90, 256 P. 939.

"It is also generally held, that the name given a machine does not determine whether it comes under the statutory classification of a slot machine, but that is determined by the manner and result of its operation. Mackay v. State [65 Okla. Cr. 149], 83 P. 2d 611. * * *

"In the case of Harvie v. Heise, 150 S. C. 277, 148 S. E. 66, 69, it is said:

" ' "In no field of reprehensible endeavor has the ingenuity of man been more exerted than in the invention of devices to comply with the letter but to do violence to the spirit and thwart the beneficent objects and purposes of the laws designed to suppress the vice of gambling. Be it said to the credit of the expounders of the law that such fruits of inventive genius have been allowed by the courts to accomplish no greater result than that of demonstrating the

inaccuracy and insufficiency of some of the old defini-
tions of gambling that were made before the advent of the
era of greatly expanded, diversified and cunning mechan-
ical inventions." (City of) Moberly v. Deskin, 169 Mo. App.
672, 155 S. W. 842.

" 'In addition to what has been said, even if it should
be conceded that it is the sincere purpose of the owner,
that the checks be played only for the amusement of the
operator, we cannot say that they have no value whatever;
for it must be that the amusement or entertainment fur-
nished the player is worth something to him if it con-
stitutes the inducement for him to operate the machine.
It is idle to argue that he would spend his money and time
in operating the machine for the purpose of obtaining
something that is of no value to him—unless we impute
to him the lack of that common sense which he is presumed
to have. Further, especially in view of the high cost of
amusement or entertainment and the immense sums paid
for it by people of all classes, it is reasonable to suppose
that the owners of the machines, if they expect the amuse-
ment or entertainment furnished to operate as an induce-
ment to play, must consider it of some value to the
operator.'

"And see Com. v. Bowman, 267 Ky. 602, 102 S. W.
2d 382.

"In the case of Colbert v. Superior Confection Co.,
154 Okla. 28, 6 P. 2d 791, Syllabus No. 2, is as follows:
'Nickel slot machine delivering package of mint of reason-
able value of five cents and sometimes, in addition, checks
usable for further playing of machine for amusement only,
held prohibited."

"In the body of the opinion it is said:

" 'It is immaterial whether or not the playing of the
slot machines amounts to gambling. The act of playing
the machines is prohibited, without regard to whether or
not the same amounts to gambling.

" 'The right of the state to legislate against this char-
acter of machine, without regard to whether or not the

machines are kept or operated for gambling purposes, has been sustained by other courts. See 27 Corpus Juris 989; 12 R. C. L. 730, and cases therein cited.' Citing and quoting from the opinion in State v. Woodman, 26 Mont. 348, 67 P. 1118, 1120, and Nelson v. State, 37 Okla. Cr. 90, 256 P. 939.

"And concludes as follows:

" 'If the act in question applied only to things of value, we think that the amusement held out as an inducement is a thing of value sufficient to bring these machines within the plain provisions of the act. We are of the opinion that the act is applicable without regard to the value of the things held out as an inducement to the playing of the machine.' "

As was stated in that opinion, there is no ambiguity in the act; it was the plain intention of the Legislature to prohibit the operation of slot machines of all kinds and character, whether they be denominated slot machines, marble boards, pin machines, or by what other name called. This was clearly a matter for the Legislature to determine; and they have seen fit as part of the police power of the state to prohibit the maintenance and operation of machines similar in character to the one involved herein.

It is not a matter for this court to say whether the Legislature acted wisely or unwisely, so long as it confines its legislation to fields within the constitutional limitations placed upon it. If, as suggested by the petitioners, the act in question as construed by the court in Ex parte Davis, supra, and as we are construing it here, is too harsh and severe, this is a matter to be submitted to the Legislature for their consideration and correction if they deem it necessary. This court cannot legislate; it is only for us to determine whether the Legislature exceeded the authority it has under the police power in the protection of the public welfare or whether its acts are repugnant to some constitutional provision.

There is no error in the record. The machine in question clearly comes within the terms of House Bill No. 125, supra, and the operation of said machine being contrary to the provisions of said act, the lower court clearly had no alternative than to find the defendant guilty.

The judgment is accordingly affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.