## Commonwealth v. Goldsmith

*C. E. Davis,* assistant district attorney, for Commonwealth.

*Shettig & Nelson,* for defendant.

EVANS, P. J., April 15, 1931.—The defendant in this case was charged with violation of the gambling laws of this state, which, under sections fifty-five and fifty-six of the Act of March 31, 1860, P. L. 382, 397, 398, respectively, make it unlawful for any person to set up or establish, or cause to be set up or established, in any house, room, etc., or any other place, any game or device of chance or hazard, with cards, etc., or any other instrument or thing whatsoever, which heretofore or which may hereafter be invented, used or employed, in which money or other valuable thing may or shall be played for or staked or betted upon; and, also, making it unlawful under section fifty-six for anyone to keep or exhibit any device or apparatus to win or gain money or other property of value, or to aid, assist or permit others to do the same.

At the trial, as part of the Commonwealth's case, the defendant admitted certain facts, and at the conclusion of the Commonwealth's testimony the defendant demurred to the sufficiency of the same to sustain the indictment, in which demurrer the Commonwealth joined issue. The case was then submitted to the jury, and the jury were, in effect, directed to render a verdict of guilty. As we now understand the law, it was not necessary that the case should have been submitted to the jury. The result of the demurrer on the part of the defendant and the Commonwealth joining therein was that a question of law alone was raised; the jury should have been discharged and the trial judge determine the innocence or guilt of the defendant.

However, the jury returned a verdict of guilty, and the defendant now has a motion for a new trial and arrest of judgment, and for the discharge of the defendant on the ground that there was not sufficient evidence to sustain the offense charged in the indictment.

This case presents another effort upon the part of manufacturers of gambling machines to get within the law and still have a machine that is attractive to the public by reason of its features of chance. In addition to that, the present machine is so constructed that by the removal of a single pin the chances of the player are that he may receive money in addition to the merchandise received, up to the amount of twenty nickels, or one dollar. The machine is called "The mint vending machine." It has the appearance of the ordinary slot gambling machine with the exception that mints are shown, and upon each play the player

receives a five-cent package of mints. There is presented, however, to the view of the player three revolving cylinders upon which are different symbols, and when the lever is pulled these wheels revolve at different speeds so that various combinations are shown when the machine stops. In addition to this, the machine, in the condition in which it was brought into court, which was with the pin still in place, would disgorge at times metal washers or slugs, varying from none to twenty, and in operating the machine a revolving cylinder indicated to the player whether he would receive any slugs, or a certain number. As the machine is brought into court it is admitted that the playing of the slugs or metal discs into the machine will not cause it to discharge other packages of mint, but merely causes the three cylinders on which the various symbols are printed to revolve; the printing indicating what happens when the machine is operated is obscure and would not be readily observed by the person playing the machine. On the contrary, as the machine is presented to the public, without a close examination, it would appear to be a device in which one would be invited to play his money with the chance of receiving the mints and something in addition; and, as a fact, even in its most favorable light, it does conduct a chance as to whether or not the player will receive some property in addition to the package of mints. It is true that the slugs which may be disgorged in different numbers at times do not have large intrinsic value, yet they are property of some value. In addition to this, the apparent purpose of the machine is to provide a means whereby a game of chance may be operated apparently within the law, but actually prohibited by law. It is inconceivable that any customer who wants to purchase a package of five-cent mints will take the time to play into the machine unless he has in his mind a hope that there is some chance to secure additional property; and that the machine is constructed with this idea in view is too plain for argument.

Under our act of assembly, there is nothing to indicate what the value of the property gambled for must be. It is true that the metal discs in small quantities would not have much value, but that they do have actual intrinsic value is beyond dispute, and that there is a hazard as to the winning of some property in addition to the receipt of the package of mints is admitted. As we understand the law, an apparatus is a gambling device where there is anything of value to be won or lost, no matter how small the intrinsic value, as the result of chance. Bouvier's Law Dictionary defines a gambling device as "any contrivance or apparatus by which it is determined who is the winner or loser in a chance or contest on which money or value is staked or risked."

In 27 C. J. 989, under the general title of gaming, under the head of slot machines, it is said: "The various courts have formulated different rules for determining when a slot machine is a gambling device, but one which seems to have been accepted very generally is that, where one who plays a slot machine stands to win or lose money, trade or checks, by hazard or chance, the machine is a gambling device. The machine is a gambling device where its operation is such that, although the player in any event will receive something, he stands a chance to win something in addition. Some courts hold that a slot machine is not a gambling device where the element of chance is wholly absent, as where the machine indicates with absolute certainty, before the player deposits his coin or check, what he will receive; but other courts hold the contrary on the theory that the machine holds out an inducement to play in the expectation that by the play the machine will be set to indicate a larger reward the following play."

Vol. 12 R. C. L. 730, under the same subject and titles, is substantially to the same effect and, among other things, says: "And where the return to the

player is dependent on an element of chance, the generally prevailing opinion seems to be that a slot machine is a gambling device even though the player is assured of his money's worth of some commodity and, hence, cannot lose."

In 2 Brill's Cyc. of Criminal Law, Sec. 1084, it is said: "A slot machine is a gambling device and the use of it is gambling, where the player stands to win or lose money, trade or checks by a hazard or chance, and this is true although the player always receives merchandise of the value of the money put into the machine where there is a chance that he may receive more and though the machine indicates before each play what the reward will be."

In the machine now before us there is no indication to the player beforehand what he will receive except the package of mints; what he will receive in addition to that is left to chance in the operation of the machine.

In the case of Lang et al. *v.* Merwin, 99 Me. 486, 59 Atl. 1021, Mr. Justice Emery, in discussing a slot machine case, among other things, said: "In the case before us, it is idle to assume or concede that the person putting his five cents into the machine may be doing so merely as a means or mode of buying a five-cent cigar. It is idle to deny that the impelling motive is the hope of getting other cigars for nothing. If the machine did not afford that chance it would not be used. . . . The element of chance is the soul of the transaction. The operator hopes by chance to get something for nothing." In the case just cited the operator had a chance of winning additional cigars.

In the case of People *v.* Jenkins, 138 N. Y. Supp. 449, the Supreme Court of New York, in considering a machine in which merchandise was always received for the deposit of five cents, but from which there was a chance of securing trade checks, held the machine to be a gambling device, and President Judge Smith in discussing the contention of the defendant, that the case was controlled by the decision of the Court of Appeals of New York in the case of The Yale Wonder Clock Co. *v.* Surman, 193 N. Y. 632, pointed out that the case cited was determined without any opinion filed either in the Supreme Court or the Court of Appeals; and, further, that in the machine in question in that case there was a chart indicating, before any money was paid, just exactly what the player would receive, but Judge Smith calls attention to this fact, which was not argued, and, as he suggests, apparently not considered, in that case, and that is that the chart was placed in so inconspicuous a place as not to attract attention, and says: "It is possible that in the machine there considered this chart was placed so inconspicuously as not to attract attention, and so as to present to the ordinary customer, who did not study the chart, an uncertain option. If that machine had been attacked upon such a ground it might well have been held to have been a gambling device, but that case was not tried upon any such theory. The referee in the case was not requested to find any fact in reference to such a theory, and as the case stood before this court we were not authorized to find facts not found by the referee in order to reverse the judgment."

In the present case, we are of the opinion that the machine is a gambling device for the reasons, first, that even though all the printed instructions were carefully read, yet there is a chance offered to the player to win something in addition to the package of mints which is received at the time of playing, and, second, because the machine bears every resemblance to the ordinary gambling slot machine and is so built for the purpose of inducing the public to believe that the player is playing a game of chance, and the instructions indicating just what is to be received are placed in a position and in such form as not to be readily noticed except upon a close examination.

No reason has been offered to sustain the motion in arrest of judgment, and in view of the conclusions reached as above indicated, the motion for a new trial will be overruled.

## Decree

And now, April 15, 1931, after argument and due consideration, the motions of defendant for a new trial and in arrest of judgment and for the discharge of the defendant on the ground that there is not sufficient evidence to sustain a conviction of the offense charged in the indictment are all overruled, and the defendant is directed to appear before the court on Monday, May 5, 1931, at 10 o'clock A. M., for sentence.

From Henry W. Storey, Jr., Johnstown, Pa.